UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

_____
)
ERNESTO JIMENEZ-GONZALEZ and )
JOSE ALBERTO TORRES-MARTINEZ, )
ON BEHALF OF THEMSELVES AND ALL )
OTHERS SIMILARLY SITUATED, )        Case No.: _____
)
    Plaintiffs, )        COMPLAINT – CLASS ACTION
)
v. )
)
CORA TEXAS GROWERS AND )
HARVESTERS AGRICULTURAL )
ASSOCIATION, INC. and CORA TEXAS )
MANUFACTURING COMPANY, LLC, )
)
    Defendants. )
_____)

## COMPLAINT – CLASS ACTION

### PRELIMINARY STATEMENT

1.      This is an action by foreign truck drivers brought to Louisiana to drive tractor-trailers for Defendants with H-2A temporary visas obtained by Defendants. Plaintiffs Ernesto Jimenez-Gonzalez and Jose Alberto Torres-Martinez ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Cora Texas Growers and Harvesters Agricultural Association, Inc. and Cora Texas Manufacturing Company, LLC ("Defendants").  Plaintiffs seek redress on behalf of themselves and all other similarly situated workers for Defendants' violation of their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), for breach of contract, and for violation of the Louisiana Wage Payment Act, Louisiana Revised Statutes §§ 23:631, *et seq*.  ("LWPA").

2.      Defendants obtained the labor of the Plaintiffs and other class members pursuant to H-2A visas based on Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc.'s false representations to the United States government that they would be

1

employed as agricultural workers.  In reality the Plaintiffs and other class members were employed as non-agricultural workers driving heavy tractor-trailer trucks over public roads to the sugar mill operated by Defendant Cora Texas Manufacturing Company, LLC.

3.      This action is brought on behalf of a class that likely numbers more than 300 truck drivers from Mexico who worked for Defendants in Louisiana between 2021 and the present.

4.      Defendants failed to pay Plaintiffs and others similarly situated the federal minimum wage as required by the FLSA by failing to reimburse costs incurred for Defendants' benefit, including required specialized drivers' licenses, medical examination fees, fees related to obtaining H-2A visas, hotel expenses associated with obtaining H-2A visas, recruitment costs, transportation expenses from Mexico to the United States, and border crossing fees.

5.      Defendants never paid Plaintiffs and others similarly situated overtime wages despite Plaintiffs and others similarly situated regularly working more than 40 hours each workweek.

6.      Defendants breached their employment contracts with Plaintiffs and the other class members by failing to pay them the proper hourly wage rates for the position in which they were employed as heavy tractor-trailer truck drivers and by failing to comply with federal and state laws related to employment, including by failing to pay appropriate minimum and overtime wages pursuant to the Fair Labor Standards Act.

7.      Plaintiffs, on behalf of themselves and the other class members, seek an award of money damages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees to make them and other class members whole for damages each of them suffered due to Defendants' violations of the law.  Plaintiffs seek declaratory relief to ensure that

they and others are not subjected to similar practices in the future.

## JURISDICTION

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(federal question jurisdiction) and the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA").

9.     This Court has supplemental jurisdiction over the breach of contract claims and

the LWPA claims pursuant to 28 U.S.C. § 1367(a), as the breach of contract claims and LWPA

claims arise out of the same facts which support the federal claims such that they form part of

the same case or controversy.

10.     Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

11.     Venue in this district is proper under 28 U.S.C. § 1391.  Defendants Cora Texas

Growers and Harvesters Agricultural Association, Inc. and Defendant Cora Texas

Manufacturing Company, LLC have their principal places of business in White Castle,

Louisiana.  Plaintiffs and other class members were employed by the Defendants in this

district and the events giving rise to their claims occurred in this district.

## PARTIES

12.     Plaintiff Ernesto Jimenez-Gonzalez was employed by Defendants as a truck

driver in 2019, 2020, 2021, 2022, and 2023 under the terms of H-2A visas.

13.     Plaintiff Jose Alberto Torres-Martinez was employed by Defendants as a truck

driver in 2021, 2022, and 2023 under the terms of H-2A visas.

14.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented in writing to be party

plaintiffs in this FLSA action.  Their written consents are attached to this Complaint as Exhibit

A.

15.     Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. is a Louisiana corporation that has its principal place of business in White Castle, Louisiana.

16.     Defendant Cora Texas Manufacturing Company, LLC is a Louisiana corporation that has its principal place of business in White Castle, Louisiana.

17.     At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that they operated an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

18.     At all times relevant to this action, Plaintiffs and the other class members were admitted to the United States under the H-2A temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), administered in part by the United States Department of Labor (DOL).

19.     At all times relevant to this action, Plaintiffs and the other class members were employees of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

20.     At all times relevant to this action, Plaintiffs and the other class members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

21.     Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. was the Plaintiffs' and other class members' employer as it contractually promised it was an employer and petitioned to be the employer of Plaintiffs and other class members through written employment contracts submitted to the DOL.

22.     Defendant Cora Texas Manufacturing Company, LLC was Plaintiffs' and other class members' employer as it directed Plaintiffs' and other class members' work, supplied Plaintiffs and other class members with tools and equipment necessary to do their work, and suffered or permitted Plaintiffs and other class members to work in its operations.

23.     Upon information and belief, Defendants Cora Texas Manufacturing Company, LLC employed Plaintiffs' and other class members' supervisors and assigned Plaintiffs and other class members work, including determining Plaintiffs' and other class members' work schedules and locations of work.

24.     Defendants jointly directed and controlled the work of the Plaintiffs and the other class members and were their joint employers within the meaning of the FLSA and the H-2A regulations.  Defendant Cora Texas Manufacturing Company, LLC, *inter alia*, dispatched Plaintiffs and other truck drivers on a daily basis, communicated with them to provide work instructions, directed when and where they should drive, and determined when they should start and stop work.

25.     For each action taken by Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. in furtherance of their business arrangement with Defendant Cora Texas Manufacturing Company, LLC—including, *inter alia*, submitting applications for H-2A visas, recruiting, hiring, supervising, and paying workers, Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. was acting as an agent of Cora Texas Manufacturing Company, LLC.

## FACTS

## THE H-2 VISA PROGRAMS

26.     The H-2A visa program allows employers who meet specific regulatory requirements to bring foreign workers to the United States to fill temporary agricultural jobs.  An employer in the U.S. may hire foreign workers to perform temporary agricultural labor if the DOL certifies that (1) there are insufficient available workers within the United States to perform the jobs; and (2) the employment of foreign workers will not adversely affect the

wages and working conditions of similarly situated U.S. workers.   8 U.S.C. §

1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1).  Individuals admitted in this fashion are

commonly referred to as "H-2A workers."

27.     There is no "cap" or limit to the number of H-2A agricultural visas the United

States government may certify each year.

28.     The H-2B visa program allows employers who meet specific regulatory

requirements to bring foreign workers to the United States to fill temporary non-agricultural

jobs.  An employer in the U.S. may hire foreign guest workers to perform temporary non-

agricultural labor if the DOL certifies that (1) there are insufficient available workers within

the United States to perform the jobs; and (2) the employment of foreign workers will not

adversely affect the wages and working conditions of similarly situated U.S. workers.   8

U.S.C. § 1101(a)(15)(H)(ii)(b); 8 U.S.C. § 1188(a)(1).  Individuals admitted in this fashion are

commonly referred to as "H-2B workers."

29.     There is a statutory "cap" or limit to the number of non-agricultural H-2B visas

that the United States government may certify each year.

30.     Federal regulations at 20 C.F.R. § 655.122 establish the minimum benefits,

wages, and working conditions that must be offered by an agricultural employer as part of an

H-2A visa application in order to avoid adversely affecting similarly situated U.S. workers.

31.     An employer seeking a temporary labor certification for agricultural workers

under the H-2A visa classification must satisfy certain regulatory requirements by completing

forms ETA 9142A, ETA 790, and ETA 790A which are intended to disclose all the material

terms and conditions of employment that the employer will offer the H-2A workers.

32.     The temporary labor certification application forms include an attestation by

the employer that it will abide by applicable regulatory requirements, including but not limited to the following terms:

>    a.    The employer will pay all workers the highest of the applicable adverse effect wage rate (AEWR) in effect at the time the work is performed, the prevailing hourly wage or piece rate, or the federal or state minimum wage for every hour or portion thereof worked during a pay period. 20 C.F.R. §§ 655.120, 655.122(l); and

>    b.    An assurance that the employer will comply with applicable federal, state, and local laws and regulations.  20 C.F.R. § 655.135(e).

33.    The temporary labor certification application forms also require an employer to state the job title based on the job duties that will be performed by the prospective H-2A workers.

34.    The temporary labor certification application forms also require an employer to identify its principal business using the North American Industry Classification System (NAICS) code that applies.

35.    The following adverse effect wage rates (AEWR) applied to H-2A workers employed in certain agricultural occupations in Louisiana between 2021 and 2023:

>    2021:  $11.88 per hour
>    2022:  $12.45 per hour
>    2023:  $14.53 per hour.

36.    Temporary foreign workers under the H-2 program who are employed in non-agricultural jobs such as heavy tractor-trailer truck drivers are required to be paid a wage that is much higher than the AEWR.

37.    The wage rates required to be paid temporary foreign workers employed as heavy

tractor-trailer truck drivers in Iberville Parish, Louisiana between 2021 and 2023 were:

2021:  $20.24 per hour
2022:  $23.70 per hour
2023:  $24.69 per hour.

## DEFENDANTS' PARTICIPATION IN THE H-2 VISA PROGRAMS

38.     Defendants were familiar with the federal government's H-2 visa programs and made use of both the H-2A and H-2B visa programs to obtain foreign workers for Defendants' business of running a sugar cane mill.

39.     Upon information and belief, Defendants sought certification of H-2A visas for the Plaintiffs and other class members in order to avoid the annual cap on the number of H-2B visas each year and in an effort to pay the lower H-2A AEWR rather than the applicable prevailing wage for the work of heavy tractor-trailer drivers.

40.     Defendants knew that the work to be performed by the Plaintiffs and other class members of driving heavy tractor-trailer trucks was non-agricultural within the meaning of the H-2A regulations but sought to hide that fact from the United States government as part of their application process for foreign workers.

41.     Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. applied for temporary labor certifications to employ foreign workers pursuant to the H-2A visa program for work in Louisiana in 2021, 2022, and 2023.  These temporary labor certification applications sought certification for the following time periods and for the following number of individuals:

2021:  9/13/2021 – 12/31/2021 (270 H-2A workers)
2022:  9/16/2022 – 12/31/2022 (270 H-2A workers)
2023:  9/1/2023 – 12/31/2023 (240 H-2A workers).

42.     The application forms submitted by Defendant Cora Texas Growers and

8

Harvesters Agricultural Association, Inc. to obtain certification to employ H-2A workers in 2021, 2022, and 2023 incorrectly listed the job title that Plaintiffs and other class members would perform as "Agricultural Equipment Operators" when, in fact, the position was heavy tractor-trailer truck driver and inaccurately listed the Defendants' principal business using the NAICS Code as 1119 for "Other Crop Farming" when, in fact, Defendants did not engage in the growing of any crops.

43. The NAICS definition for "Other Crop Farming" states, in part, that "This industry comprises establishments primarily engaged in (1) growing crops . . . such as sugarcane."

44. During the time period relevant to this lawsuit, Defendants never engaged in the growing of sugarcane. Rather, they operated a sugar mill and a fleet of heavy tractor-trailer trucks hauling sugarcane grown by others to the mill in White Castle, Louisiana. Defendants deliberately sought to mislead government officials reviewing their applications in order to receive approval to employ H-2A workers by incorrectly stating that they grew crops and that the work to be performed was "agricultural."

45. The temporary labor certification applications submitted by Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. contained the terms and conditions of employment required by the federal regulations and also included an attestation that Defendants would abide by the applicable regulatory requirements pertaining to the H-2A temporary work program, as well as other federal and state laws.

46. The temporary labor certification applications submitted by Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. in 2021 and 2022 contained a promise that "[o]vertime will be paid when required by law."

47.     The temporary labor certification applications submitted by Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc. in 2023 incorrectly claimed that the work being performed was exempt from the overtime pay requirements of the FLSA but promised that overtime pay would be paid for non-exempt activities.

48.     Federal law required that the Plaintiffs and other class members be paid overtime wages when they worked more than 40 hours in a workweek.  The work the Plaintiffs and other class members performed was entirely non-exempt intrastate truck driving.

49.     The DOL-approved temporary labor applications, the accompanying attestations, and the applicable regulatory requirements formed a contract between Defendants on the one hand and Plaintiffs and other class members on the other, with enforceable terms and conditions of employment, including a promise to pay wages in compliance with federal law and which would be no less than the required wage rate for the type of work to be performed.

50.     Because of the misrepresentations with respect to the job title, job duties, and the industry in which they were engaged contained in Defendants' petitions for foreign workers, Defendants were certified to employ H-2A agricultural workers instead of non-agricultural H-2B workers and paid Plaintiffs and other class members the H-2A AEWR rather than the much higher wage rate for heavy tractor-trailer truck drivers that should have been paid.

## THE RECRUITMENT AND VISA PROCESS

51.     Defendants obtained the H-2A visas of Plaintiffs and other class members in order to fill their labor shortages. Plaintiffs' and other class members' H-2A visas allowed them to work only for Defendants.

52.     Plaintiffs and other class members maintain their permanent residences at various locations in Mexico, where they learned of the job opportunity with Defendants.

53.     Plaintiffs and other class members are native Spanish speakers with very limited English-speaking abilities and are relatively unfamiliar with their legal rights in the United States or the requirements of nonimmigrant labor petitions made by U.S. employers.

54.     Plaintiffs and other class members spent considerable sums of money to obtain their H-2A work visas and travel from their hometowns in Mexico to the United States to work for Defendants in Louisiana.

55.     Plaintiffs and other class members incurred expenses to obtain special drivers' licenses that would allow them to drive heavy tractor-trailer trucks in the United States for the Defendants.

56.     Plaintiffs and other class members incurred expenses for medical examinations for the purposes of working for the Defendants as truck drivers.

57.     Plaintiffs and other class members incurred recruitment expenses in order to work for Defendants as truck drivers.

58.     Plaintiffs and other class members incurred transportation expenses to travel from their hometowns to the U.S. Consulate for the processing of their H-2A visas.

59.     Plaintiffs and other class members incurred lodging expenses while they waited for their H-2A visa applications to be processed.

60.     Plaintiffs and other class members paid a $190 fee as part of the H-2A visa application process.  This fee was primarily for the benefit of Defendants.

61.     Plaintiffs and other class members incurred additional transportation expenses to travel to the Defendants' work location in Louisiana.

62.     Plaintiffs and the other class members paid a fee of $6 for issuance of Form I-94 as a requirement for entering the United States.

63.     Plaintiffs and the other class members incurred telephone expenses in order to have a telephone they could use in the United States necessary for their work for Defendants.

64.     The expenses detailed above in paragraphs 54 to 63 were primarily for the benefit of Defendants and were not properly reimbursed during the Plaintiffs' and other class members' first pay periods.

## COLLECTIVE ACTION/CLASS ACTION ALLEGATIONS

65.     Plaintiffs seek to bring their FLSA claims (Count I) as a collective action on behalf of "all individuals admitted as H-2A temporary foreign workers who were employed by Defendants driving heavy tractor-trailer trucks in 2021, 2022, and/or 2023."

66.     The proposed class of workers are all similarly situated with respect to the pay practices challenged in this suit—*i.e.*, Defendants' practice of not properly reimbursing during the first workweek the pre-employment expenses incurred by Plaintiffs and other H-2A workers as a condition of coming to work for Defendants, resulting in the H-2A workers earning less than the wage required by the Fair Labor Standards Act during their first workweek.

67.     The proposed class of workers are also all similarly situated because Defendants had a uniform policy of not paying overtime wages to its H-2A truck drivers despite regularly requiring Plaintiffs and others similarly situated to work more than 40 hours per workweek.

68.     Plaintiffs' breach of contract claims (Count II) and Louisiana Wage Payment Act claims (Count III) are brought by the Plaintiffs on behalf of themselves and all similarly situated workers pursuant to Federal Rule of Civil Procedure 23(b)(3).

69.     The named Plaintiffs seek to represent a class consisting of:

All individuals admitted as H-2A temporary foreign workers
who were employed by Defendants driving heavy tractor-trailer
trucks in 2021, 2022, and/or 2023.

70.     The Plaintiffs' proposed class meets the requirements of Federal Rule of Civil

Procedure 23(a).

71.     **Numerosity**. The class members are so numerous and so geographically

dispersed as to make joinder impracticable. The precise number of individuals in the class is

known only to the Defendants.  Defendants were certified by the federal government to employ

270 H-2A workers in 2021, 270 H-2A workers in 2022, and 240 H-2A workers in 2023.   As

such, the class is believed to include at least 300 individuals.  The class is comprised of foreign

workers who are not fluent in the English language and are unfamiliar with the American

judicial system. The relatively small size of the individual claims makes the maintenance of

separate actions by each class member economically infeasible.

72.     **Commonality**. There are questions of law and fact common to the class.  These

common legal and factual questions include, but are not limited, to the following:

        a.      Whether the Plaintiffs and other class members received less than the

        required hourly wage rate for every hour of work during their first workweek as

        a result of Defendants' failure to properly reimburse them for pre-employment

        expenses.

        b.      Whether the Plaintiffs and other class members were paid the proper

        hourly wage rate applicable to heavy tractor-trailer truck drivers for each hour

        they were employed by Defendants.

        c.      Whether the Defendants violated the uniform employment contracts by

        failing to comply with all federal and state laws regulating employment,

including the requirement to pay overtime wages when the Plaintiffs and other class members worked more than 40 hours in a workweek.

d.     Whether the Defendants violated the promise made in the employment contracts that "[o]vertime will be paid when required by law."

e.     Whether the Defendants jointly employed the Plaintiffs and other class members.

73.     **Typicality**. The claims of the named Plaintiffs are typical of those of the other class members in that each of the named Plaintiffs and the other class members had their wages reduced below the applicable hourly wage rate in their first workweeks due to the Defendants' failure to properly reimburse them for pre-employment expenses incurred to work for Defendants; each of the named Plaintiffs and the other class members were not paid the required hourly wage rate applicable to their work as heavy tractor-trailer truck drivers; and each of the named Plaintiffs and other class members were not paid overtime wages for hours worked in excess of 40 in a workweek. These typical, common claims predominate over any questions affecting only individual class members.

74.     **Adequacy**. The named Plaintiffs will fairly and adequately represent the interests of the class. The named Plaintiffs have the same interests as the members of the class and will vigorously prosecute these interests on behalf of the class. Counsel for the Plaintiffs are experienced in handling actions by H-2A workers to enforce their rights under their employment contracts and have handled numerous class actions in the federal courts, including class actions on behalf of H-2A workers bringing claims similar to those presented in this action. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Federal Rule of Civil

Procedure 23(b)(3).

75.     Plaintiffs' proposed class meets the requirements of certification under Federal Rule of Civil Procedure 23(b)(3).

76.     **Predominance of Common Questions**.  The questions of law or fact common to the class, identified above in paragraph 72, predominate over any questions affecting only individual members.

77.     **Superiority**. A class action under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia:*

a.      The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

b.      Many members of the class are unaware of their rights to prosecute these claims and/or lack the means or resources to secure legal assistance, particularly while located in a foreign country;

c.      There has been no litigation already commenced against the Defendants by the members of the class to determine the questions presented;

d.      It is desirable that the claims be heard in this forum because the Defendants reside in this district and it is unclear that these claims could be heard anywhere else; and

e.      A class action can be managed without undue difficulty because the Defendants have regularly committed the violations complained of herein and were required to maintain detailed records concerning each member of the

class.

## CAUSES OF ACTION

### <u>COUNT I</u>
### VIOLATIONS OF FAIR LABOR STANDARDS ACT
#### (Collective Action)

78.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint.

79.     This count sets forth a claim for declaratory relief and damages for the Defendants' violations of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA).  This count is brought by Plaintiffs on behalf of themselves and other H-2A workers employed by Defendants who are similarly situated.

80.     The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and all others similarly situated at least the applicable minimum wage for every compensable hour of labor they performed during their first workweeks.

81.     The violations of the FLSA minimum wage provisions resulted from the Defendants' failure to reimburse Plaintiffs and others similarly situated for certain pre-employment expenses they incurred which were primarily for Defendants' benefit, reducing Plaintiffs' and other H-2A workers' wages below the minimum wage for the first workweek. Those expenses included required drivers' licenses, medical examination fees, recruitment expenses, visa fees, border crossing fees, the full cost of travel from the Plaintiffs' and others' homes in Mexico to the jobsite in Louisiana, lodging expenses while completing the H-2A visa application process, and required equipment purchases as set forth in paragraphs 54 to 633.

82.     The Defendants violated the overtime wage provisions of the FLSA, 29 U.S.C.

16

§ 207(a), by failing to pay Plaintiffs and all others similarly situated one and one-half times their regular rate of pay when they worked more than 40 hours in a workweek.

83.     Defendants' failure to pay Plaintiffs and others similarly situated their federally mandated minimum and overtime wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.     Because of the Defendants' violations of the FLSA, the Plaintiffs and all others similarly situated are entitled to recover their unpaid minimum wages, unpaid overtime wages, plus an additional equal amount in liquidated damages, the costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 2l6(b).

## COUNT II

**BREACH OF EMPLOYMENT CONTRACTS**
**(Rule 23 Class Action)**

85.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86.     This count sets forth a claim for damages resulting from Defendants' breach of its employment contracts with Plaintiffs and the other class members.

87.     The Defendants jointly employed the Plaintiffs and other class members.

88.     The terms and conditions of employment contained in Cora Texas Growers and Harvesters Agricultural Association, Inc.'s H-2A certification applications and orders constituted employment contracts between the Defendants on the one hand, and the Plaintiffs and other class members on the other hand, the terms of which were supplied by the H-2A certification applications and orders as well as the federal regulations governing the H-2A program.

89.     Plaintiffs and the other class members obtained H-2A visas pursuant to the

Cora Texas Growers and Harvesters Agricultural Association, Inc. H-2A certification applications and worked for the Defendants as truck drivers.

90.     Defendants breached the employment contracts with the Plaintiffs and the other class members by:

      a.     Failing to pay the Plaintiffs and other class members the required hourly wage rate for every hour of work during their first workweek as a result of Defendants' failure to properly reimburse the Plaintiffs and other class members for the pre-employment expenses they incurred to work for Defendants;

      b.     Failing to pay the Plaintiffs and other class members the wage rate applicable to the jobs they performed, which was heavy tractor-trailer truck drivers;

      c.     Failing to pay the Plaintiffs and other class members overtime wages when they worked more than 40 hours in a workweek, in violation of contract promises to comply with all federal laws related to employment and an express promise in the contracts that "[o]vertime will be paid when required by law" and that overtime would be paid for "non-exempt work activities"; and

      d.     Failing to pay the Plaintiffs and other class members all wages they were due upon the completion of their contracts each season as required by the Louisiana Wage Payment Act and in violation of contract promises to comply with all State laws related to employment.

91.     Defendants' breach of the employment contracts caused Plaintiffs and the other class members substantial injuries, for which Plaintiffs and the other class members are entitled

to actual and consequential damages and pre-judgment and post-judgment interest.

**COUNT III**

**VIOLATION OF LOUSIANA WAGE PAYMENT ACT**
**(Rule 23 Class Action)**

92.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93.     This count sets forth a claim for damages resulting from Defendants' violations of the Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631 and 23:632 ("LWPA").

94.     Defendants failed to pay the Plaintiffs and other class members the amounts due each of them under the terms of their employment contracts within 15 days of their resignation or discharge, in violation of the LWPA, La. Rev. Stat. 23:631(A)(1)(b).

95.     Plaintiffs notified the Defendants in writing by letter dated September 23, 2024, that unpaid wages were due and owing pursuant to the LWPA.  As of the date of the filing of this Complaint the Defendants have not paid Plaintiffs and other class members the unpaid wages they are owed.

96.     As a result of Defendants' violations of the LWPA, Plaintiffs and other class members are entitled to recover their unpaid wages as well as penalty wages pursuant to La. Rev. Stat. 23:632(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the other class members pray this Court will enter an order:

a.   Entering a declaratory judgment that Defendants violated Plaintiffs' and other class members' rights under the FLSA, that Defendants breached the

employment contracts of the Plaintiffs and other class members, and that Defendants violated provisions of the LWPA with respect to Plaintiffs and other class members;

b. Permitting this case to proceed as a collective action with respect to the claims set forth in Count I;

c. Certifying this case as a class action in accordance with Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II and III, designating Plaintiffs as class representatives, and designating counsel for Plaintiffs as counsel for the Class;

d. Granting judgment in favor of Plaintiffs and others similarly situated and against Defendants, jointly and severally, on Plaintiffs' claims under the FLSA and awarding each of them the amount of their unpaid minimum and overtime wages, along with an equal amount of liquidated damages;

e. Granting judgment in favor of Plaintiffs and the other class members and against Defendants, jointly and severally, for breach of the employment contracts with Plaintiffs, and awarding each of the Plaintiffs and the other class members their actual and consequential damages, pre-judgment interest, and post-judgment interest;

f. Granting judgment in favor of Plaintiffs and the other class members and against Defendants, jointly and severally, for violations of the LWPA and awarding Plaintiffs and the other class members their unpaid wages and penalties as required by statute;

g. Awarding Plaintiffs the costs of this action;

h.  Awarding Plaintiffs reasonable attorneys' fees;

i.  Awarding Plaintiffs pre-judgment and post-judgment interest, as permitted by law; and

j.  Granting such other relief as the Court deems just and equitable.

Dated:  October 2, 2024          Respectfully submitted,

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email:  dan@estesdavislaw.com

**/s/ Dawson Morton**
Dawson Morton*
California Bar No. 320811
1808 Sixth St.
Berkeley, CA  94710
Phone: (404) 590-1295
Email:  dawson@dawsonmorton.com

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email:  jim@dawsonmorton.com

* Motions for admission *pro hac vice* forthcoming