UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ERNESTO JIMENEZ-GONZALEZ and JOSE ALBERTO TORRES-MARTINEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No. 3:24-cv-00820-SDD-RLB |
| Plaintiffs, | JUDGE SHELLY D. DICK |
| v. | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| CORA TEXAS GROWERS AND HARVESTERS AGRICULTURAL ASSOCIATION, INC. and CORA TEXAS MANUFACTURING COMPANY, LLC, | CLASS ACTION |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR 29 U.S.C. § 216(B) NOTICE TO SIMILARLY SITUATED WORKERS AND FOR DISCLOSURE OF CONTACT INFORMATION**

Plaintiffs are truck drivers brought to the United States by Defendants to work pursuant to the H-2A temporary foreign worker visa program for the Defendants hauling harvested sugarcane in semi-trucks within Louisiana. They allege that Defendants failed to pay them and other similarly situated heavy tractor-trailer truck drivers minimum and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. (Compl. ¶¶ 78-84) (ECF No. 1.) Plaintiffs allege that Defendants violated the FLSA in two ways. There is no dispute that Plaintiffs and all of Defendants' other truck drivers regularly worked more than 40 hours per workweek and were not paid overtime wages. (Compl. ¶¶ 67, 82; Defs.' Resp. to Pls.' Req. for Admis. No. 1 (attached as Ex. 7).) There is also no dispute that Defendants reimbursed only a limited number of pre-employment expenses incurred by the PLainitiffs and other H-2A

1

truck drivers. (*See* Ex. 14) (spreadsheet provided by Defendants showing reimbursement categories). Plaintiffs allege that Defendants failed to adequately reimburse them and the other H-2A truck drivers for costs associated with obtaining the job and traveling from Mexico, including application fees, required commercial drivers' licensing fees, transportation, housing, border crossing expenses, and telephone fees—expenses that Plaintiffs allege primarily benefited Defendants—which resulted in the truck drivers not earning the minimum wage during their first workweek, in violation of the FLSA. (Compl. ¶¶ 80-81.)

Plaintiffs move the Court for an order finding that they are similarly situated to Defendants' other H-2A truck drivers and authorizing the sending of notice. Plaintiffs seek Court approval for a notice to be issued to similarly situated workers defined as:

> **All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, and/or 2024 sugarcane seasons.**

Plaintiffs additionally move the Court to order Defendants to provide Plaintiffs the names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), of the similarly situated H-2A truck drivers within fourteen (14) days, in order to assist with the issuance of Notice.

## STATEMENT OF FACTS

Plaintiffs are citizens of Mexico who were brought to the United States by Defendants as guest workers pursuant to the H-2A temporary foreign worker visa program and worked as truck drivers hauling sugarcane for the Defendants in Louisiana. (Compl. ¶ 1.) In addition to their FLSA claim, Plaintiffs also allege breaches of their employment contracts and violations of the Louisiana Wage Payment Act. However, this motion pertains only to Count I of Plaintiffs' Complaint, alleging violations of the minimum wage and overtime provisions of the FLSA on

2

behalf of themselves and other similarly situated workers.  *Id*. ¶¶ 78-84.[1]  Five (5) individuals have already filed FLSA consent to sue forms with the Court to participate as opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).  (ECF Nos. 23, 30, 31.)

During the 2021-2024 sugarcane seasons, Defendants recruited more than 200 H-2A truck drivers from Mexico each year who were employed subject to the same terms and conditions set forth in the Defendants' applications for foreign workers submitted to the federal government, called an ETA-790.  (Exs. 2-5 (ETA-790 applications completed by Defendants from 2021-2024 to obtain H-2A visas for the Plaintiffs and other truck drivers); *see also* Defs.' Resp. to Pls.' Interrog. No. 1 (stating that between 211 and 246 H-2A truck drivers were employed each season between 2021 and 2024) (attached as Ex. 6).)  The Plaintiffs and other H-2A truck drivers all did the same job of hauling harvested sugarcane by semi-truck from fields in Louisiana to the sugar mill in While Castle, Louisiana operated by Defendant Cora Texas Manufacturing Company, LLC.  (Cora Texas Ass'n. 30(b)(6) Dep. at 17:4-18:8, 20:4-7.) (attached as Ex. 8) ("Q. Do all the truck drivers do the same type of work?  A. Yes. They do the work that is approved in the ETA-790.")

Plaintiffs and other H-2A truck drivers regularly worked more than 40 hours in a workweek.  (*See, e.g.*, Exs. 9-11 (sample checkstubs for Plaintiffs and opt-in Plaintiff Miguel Martinez-Villalobos showing hours worked); Ex. 8 - Cora Texas Ass'n. 30(b)(6) Dep. at 58:16-19.)  Defendants' practice and policy was not to pay overtime wages to Plaintiffs and the other truck drivers because they believed all of the truck drivers were exempt from overtime.  (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 58:20-59:19; Ex. 7 - Defs.' Resp. to Pls.' Req. for Admis. No.

---

[1]  Plaintiffs are filing a separate motion for class certification pursuant to Federal Rule of Civil Procedure 23 with respect to their breach of contract and Louisiana Wage Payment Act claims.

3

1; Exs. 9-11 (sample checkstubs).) Plaintiffs allege Defendants' practice and policy of not paying overtime violated the FLSA and that Defendants were legally required to pay overtime wages to all of the truck drivers. (Compl. ¶¶ 78-84.)

In addition to alleging they were unlawfully denied overtime, the Plaintiffs allege that their minimum wage rights were violated when they and other H-2A truck drivers were not properly reimbursed during their first workweeks. (Compl. ¶¶ 80-81.) The Plaintiffs and other H-2A truck drivers incurred a number of fees associated with their employment with Defendants prior to their first week of work each season. Plaintiffs and other truck drivers paid application fees to be eligible to work for Defendants each season, fees for medical examinations to obtain a CDL truck driving license which Defendants required, fees for the issuance of the CDL truck driving license, transportation and hotel expenses associated with obtaining the H-2A visa and traveling to Louisiana, border crossing fees, and fees for United States cell phones in order to be able to receive work instructions from Defendants' supervisors. (Compl. ¶¶ 4, 54-63); (Ernesto Jimenez-Gonzalez Dep. at 21:18-23, 44:4-45:1, 100:10-101:8) (attached as Ex. 12); Jose Alberto Torres-Martinez Dep. at 43:20-44:16, 55:6-57:25 (attached as Ex. 13); (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 20:8-19) (CDL license or Mexican equivalent required). Defendants provided reimbursements for some of these expenses, as detailed in a spreadsheet they maintained (attached as Ex. 14), and acknowledged that "[t]he method to determine the amount of reimbursement for the truck drivers between 2021 and 2024 was the same with respect to all of the H-2A workers." (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 73:5-9.) The spreadsheet shows that no reimbursement was provided for application fees, medical examination fees associated with CDL licensing, fees for the issuance of the required CDL license, or telephone expenses. Defendants acknowledged that their policy and practice between 2021 and 2024 was not to

4

reimburse H-2A truck drivers for these fees. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 67:3-69:10, 92:17-93:10) (medical exams, license fees, and telephone charges not reimbursed).

## DISCUSSION

**I.    Plaintiffs Meet the Standard for Collective Action Certification under the FLSA.**

The FLSA expressly authorizes workers to sue collectively on behalf of themselves and others "similarly situated" for violations of the minimum wage and overtime protections of the Act. 29 U.S.C. § 216(b); *Hoffman La-Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[2] Unlike Federal Rule of Civil Procedure 23 class actions, each similarly situated employee in a FLSA collective action must "opt-in" by consenting in writing and filing a consent with the court to become a member of the suit. 29 U.S.C. § 216(b). Due to this distinction between a Rule 23 class and FLSA collective action, courts have held that the requirements of Rule 23 class actions do not apply to FLSA collective actions. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433 (5th Cir. 2021) (noting that collective actions under the FLSA proceed differently than "[t]raditional class actions" under Rule 23).

The Fifth Circuit in *Swales* clarified the standard that district courts should follow when determining whether to authorize the sending of notice to "similarly situated" individuals. *Id.* at 441 (rejecting the two-step "*Lusardi*" FLSA collective action certification process that was established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). Noting that district courts have "broad, litigation-management discretion" with respect to FLSA collective actions, the court in *Swales* held that "the FLSA's similarity requirement is something that district courts

---

[2] Although *Hoffman La-Roche, Inc. v. Sperling* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA contains a provision identical to Section 216(b) of the FLSA. *See Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 435 n.15 (5th Cir. 2021); *In re JP Morgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019).

should rigorously enforce at the outset of the litigation." *Id.* at 443. The FLSA similarity inquiry should take place after preliminary discovery is authorized so that the Court can determine "whether merits questions can be answered collectively" and to "ensure[] that any notice sent is proper in scope." *Id.* at 441-42. The Fifth Circuit has since added that, "[w]hile *Swales* rejected *Lusardi's* two-step method of 'conditional certification' and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi's* second step." *Loy v. Rehab Synergies, LLC*, 71 F.4th 329, 336-37 (5th Cir. 2023). Those factors approved in *Loy* are: (1) the disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.* at 336 (citing *Swales*, 985 F.3d at 437). Here, Plaintiffs and other H-2A truck drivers employed by the Defendants to haul sugarcane meet the similarity requirements.

**A.    Plaintiffs and Other H-2A Truck Drivers Have Similar, if not Identical, Factual and Employment Settings.**

There are no disparate factual or employment settings regarding the Plaintiffs and other H-2A truck drivers. All of Defendants' truck drivers worked pursuant to Defendants' H-2A visas, shared the same written employment contract and job title, employment terms, and all drove trucks hauling sugarcane in Louisiana to the sugar mill, also in Louisiana. (Ex. 8 - Cora Texas Ass'n. 30(b)(6) Dep. at 17:4-18:8, 20:4-7, 23:10-24:3, 37:2-18.) The truck drivers' H-2A visas were issued based on certifications that Defendants received from the federal government after they filed proposed job terms in a document known as Department of Labor ETA-790 job orders each year. The proposed job terms applied to all of the truck drivers and described the job duties, job title, and terms of employment. (Exs. 2-5) (ETA-790 job orders); *see also Hernandez*

*v. Patricio*, No.: 5:23-cv-23, 2024 U.S. Dist. LEXIS 205915, at *6 (S.D. Ga. Aug. 13, 2024) (noting that H-2A workers were similarly situated because H-2A job order demonstrated that employer promised similar pay provisions to all members of the collective class).

      With respect to how H-2A truck drivers were paid, there is no dispute that Plaintiffs and all other H-2A truck drivers regularly worked more than 40 hours in a workweek and that Defendants did not pay overtime wages to any of the H-2A truck drivers. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 58:16-59:19; Ex. 7 - Defs.' Resp. to Pls.' Req. for Admis. No. 1.) Similarly, Defendants had a uniform reimbursement policy that applied to all H-2A truck drivers. Defendants reimbursed only certain expenses based on estimates of the costs incurred while excluding other costs from reimbursement. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 79:6-21, 82:12-83:2, 85:18-86:13 ("This entire spreadsheet is an estimate of travel.").) Several categories of expenses were completely excluded from reimbursement as a matter of practice or policy. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 67:3-69:10, 92:17-93:10 (no reimbursement for medical exams related to CDL licenses, CDL license fees, or United States cell phones); Ex. 14 (showing categories and amounts of reimbursements that were provided).) Specifically, the expenses incurred by Plaintiffs and other truck drivers for inscription fees, obtaining the CDL licenses required to drive trucks for the Defendants in the United States, and cell phones they purchased to be able to receive work communications were not reimbursed to *any* H-2A truck drivers. (*See id.*)

**B.     Defenses that may be Asserted are not Specific to Individual Plaintiffs or Other Similarly Situated H-2A Truck Drivers.**

The defenses that Defendants may assert in this case are collective in nature rather than unique to any individual Plaintiff or other H-2A truck driver.[3]  With respect to the overtime claims, Defendants contend that the truck drivers are exempt from overtime based on the FLSA's agricultural exemption.  (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 58:16-59:19; Ex. 7 - Defs.' Resp. to Pls.' Request for Admis. No. 1); *see* 29 U.S.C. §§ 203(f) (definition of agriculture), 213(b)(12) (exemption).)  Plaintiffs allege that the truck drivers were not engaged in "agricultural" work within the meaning of the FLSA.  (Compl. ¶¶ 2, 40, 42-44, 47-48.)  A determination of whether the agricultural exemption applies does not turn on facts specific to individual truck drivers, but rather on the nature of Defendants' business.  *See Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 587-89 (5th Cir. 1967) (holding that drivers who hauled harvested sugarcane from fields to the sugar mill were not exempt from overtime under the FLSA's agricultural exemption because it was not done "on a farm" or by "farmers"); 29 C.F.R. § 780.133 ("The work performed by a farmers' cooperative association is not work performed 'by a farmer' but for farmers.  Therefore, employees of a farmers' cooperative association are not generally engaged in any practices performed 'by a farmer' within the meaning of section 3(f)"); *Tullous v. Texas Aquaculture Processing Co., LLC*, 579 F. Supp. 2d 811, 817-19 (S.D. Tex. 2008) (analyzing the nature of the defendant cooperative association and determining that it did not meet the definition of agriculture for purposes of the overtime exemption because it was not

---

[3]  Defendants have not yet filed an Answer based on their pending motion to dismiss.  (ECF No. 20.)  Plaintiffs do understand from the motion to dismiss and the Cora Texas Ass'n 30(b)(6) deposition that Defendants deny that any violations of the FLSA were willful and that Defendants allege the Plaintiffs and other truck drivers were exempt from overtime under the FLSA pursuant to the agricultural exemption.  Both issues would be decided based on *Defendants'* actions and activities rather than anything individual to any Plaintiff or other H-2A truck driver.

8

"a farmer"). As such, the FLSA agricultural exemption either applies or does not apply with respect to *all* of Defendants' H-2A truck drivers.

Likewise, with respect to the minimum wage claims related to the expenses incurred by H-2A truck drivers, there are no defenses that are individual to any of the H-2A truck drivers. Plaintiffs allege that, as a result of Defendants' practice and policy of not reimbursing them fully for certain expenses, they and other similarly situated H-2A truck drivers were not paid the minimum wages required by the FLSA during their first workweeks. (Compl. ¶¶ 80-81); *see Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 897-899 (9th Cir. 2013) (holding that it was a violation of the FLSA minimum wage provisions to not reimburse H-2A workers for expenses they incurred that were primarily for the benefit of their employer); *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1242-44 (11th Cir. 2002) (same). Whether Plaintiffs or Defendants prevail on this issue turns on whether the expenses were primarily for the benefit or convenience of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(m), which is a legal question that will apply to *all* workers. *See Arriaga*, 305 F. 3d at 1236 (holding that items that are primarily for the benefit of the employer may not drive wages below the minimum); *Moodie v. Kiawah Island Inn Co.*, 124 F. Supp. 3d 711, 720 (D.S.C. 2015) (finding that medical testing paid for by prospective H-2B employees was primarily for the benefit of the employer).

  **C.** **Collective Adjudication of the FLSA Claims of Plaintiffs and other Similarly Situated H-2A Truck Drivers is Fair and Procedurally Efficient.**

Fairness and procedural considerations weigh heavily in favor of a finding that the Plaintiffs and other H-2A truck drivers are similarly situated and should receive notice of this action. As the Supreme Court stated, "[a] collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by pooling resources. The judicial system

9

benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffman-LaRoche*, 493 U.S. at 170.

As explained above, the facts and employment circumstances of the Plaintiffs and other H-2A truck drivers are overwhelmingly similar. They all drove heavy tractor-trailer trucks hauling harvested sugarcane to the sugar mill, had the same job duties, regularly worked more than 40 hours per week without receiving overtime pay, were subject to the same reimbursement policies, and worked under the same terms and conditions contained in written employment contracts. Given these similarities, as well as Defendants' claim that all of the H-2A truck drivers were exempt from overtime based on Defendants' interpretation of the FLSA agricultural exemption, it is more efficient and in the interest of judicial economy to have this matter resolved collectively rather than through multiple individual lawsuits. *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008) ("[G]iven the substantial similarity of the putative class members' claims, it certainly would not be in the interest of judicial economy to require the claims to be adjudicated in [hundreds of] individual trials."); *see also Escobedo v. Dynasty Insulation, Inc.*, No. EP-08-CV-137-KC, 2009 U.S. Dist. LEXIS 66836, at *29 (W.D. Tex. July 31, 2009) (noting the FLSA's remedial purposes and stating that "[i]f Defendant did indeed fail to pay overtime . . . then Defendant retained income which belong to its former employees. Such failure is best remedied by allowing Plaintiffs—some of whom may not have the resources or sophistication to commence an action individually—to vindicate their rights as a group.").

Courts routinely find truck drivers and H-2A workers are similarly situated and authorize notice be sent in actions alleging similar FLSA violations as those asserted here. *See, e.g., Thomas v. Quikrete Co., LLC*, No. SA-23-CV-00638-FB, 2024 U.S. Dist. LEXIS, at *5-6 (Dec.

10

3, 2024) (authorizing notice to truck drivers denied overtime pay where all drivers were "classified as exempt" and were "hired under a common job description and performed the same general job duties"); *Barron v. Sterling Sugar Sales Corp.*, No. 6:21-cv-03741, 2022 U.S. Dist. LEXIS 89904, at *16 (W.D. La. May 17, 2022) (authorizing notice to H-2A workers employed as truck drivers to haul sugarcane asserting claims for unpaid overtime). Whether the Defendants' policies and practices violated the FLSA are issues where the outcome will apply to all of the H-2A truck drivers since they were "victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion." *Perez-Benites v. Candy Brand, LLC*, No. 07-CV-1048, 2008 U.S. Dist. LEXIS 91402, at *8 (W.D. Ark. Oct. 31, 2008) (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1106-08 (10th Cir. 2001)). Plaintiffs' motion should be granted authorizing notice to be sent to other H-2A truck drivers employed by the Defendants in 2022, 2023, and 2024.

## II.    Plaintiffs' Proposed Notice Should be Approved and Other Truck Drivers Given 90 Days to File Consents to Sue.

A copy of Plaintiffs' proposed notice is attached as Exhibit 1. Plaintiffs have also included the content of the body of their proposed emails and text messages/WhatsApp messages. Given that all of Defendants' truck drivers were H-2A workers from Mexico (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 21:25-23:5), Plaintiffs will send the notice in Spanish and will have it translated once approved by the Court.

Postal mail service to workers in Mexico is often slow and sometimes unreliable. (Knoepp Decl. ¶ 3) (attached as Exhibit 15). Moreover, individuals who work on employment visas often migrate frequently and are therefore not always at their primary residence to receive postal mail. (Knoepp Decl. ¶ 4.) Over the last several years it has been much more common to communicate with individuals who migrate frequently with H-2A visas via text message and

WhatsApp, and occasionally via email. (Knoepp Decl. ¶ 5.) Given this, Plaintiffs propose to send the notice via postal mail, email, text message/WhatsApp message, and by posting the notice on a website that would allow potential opt-in Plaintiffs to electronically sign their forms from the website.[4] These are all methods approved by other courts in the FLSA collective action context. *See, e.g.*, *Barron*, 2022 U.S. Dist. LEXIS 89904, at *11 (authorizing notice by mail, email, text, and WhatsApp to H-2A truck drivers where "workers who might become plaintiffs in this case are all persons who primarily reside out[side] of the United States"); *see also Beukes v. Boehnke*, No. 24-cv-828 (JWB/DLM), 2024 U.S. Dist. LEXIS 180758, at *20-22 (D. Minn. Oct. 3, 2024) (collecting FLSA cases related to electronic signatures and permitting electronic consent forms to be executed given the realities that H-2A workers may be away from their permanent residences for extended periods of time); *Lopez v. Boykin Farms, Inc.*, No. 5:22-CV-491-BO-RN, 2023 U.S. Dist. LEXIS 191844, at *10 (E.D.N.C. Oct. 25, 2023) (authorizing notice via text, WhatsApp, and website posting in case involving H-2A workers); *Thrower v. UniversalPegasus Int'l, Inc.*, 484 F. Supp. 3d 473, 489-90 (S.D. Tex. 2020) (noting that first-class mail is "quickly fading into obscurity" and finding that notice via text would be "particularly useful . . . as the class involves pipeline workers who routinely travel for work and are way from their home for extended periods of time"). In fact, Defendants themselves used WhatsApp to provide H-2A truck drivers with copies of the ETA-790 work contract forms electronically in 2024. (Ex. 8 - Cora Texas 30(b)(6) Dep. at 56:2-19.)

---

[4] Plaintiffs intend to use a third-party administrator to assist with sending notice. The "website" would simply be a landing page set up by the administrator that would contain the FLSA Notice and opt-in form, as well as a copy of the Complaint. Because the notice is too long to send over text message/WhatsApp message, a link would be provided to the landing page where people could review the documents and electronically complete the opt-in form. The link would also be provided in the email notifications that are sent.

12

Plaintiffs propose that individuals be provided 90 days from the date the notice is sent to respond by sending/postmarking (or electronically signing) their opt-in form and ask the Court to approve this time frame. *See Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2025 U.S. Dist. LEXIS 78855, at *33 (W.D. Tex. Apr. 25, 2025) (affirming partial FLSA certification by magistrate and finding objection to 90-day notice period, reminder notice, and text notice "lack merit"); *Stringer v. Big Texan Steak Ranch, Inc.*, No. 2:23-CV-181-Z-BR, 2025 U.S. Dist. LEXIS 35271, at *16-17 (N.D. Tex. Feb. 27, 2025) (permitting 90-day opt-in period and reminder notice). This will allow sufficient time to work through any difficulties with returned mail or electronic messages and the possibility that potential opt-in Plaintiffs are migrating and/or have changed phone numbers and therefore do not receive the notice. Plaintiffs' counsel will file a certificate of completion with the Court when the notices are sent and the 90-day opt-in period has begun. Plaintiffs also request they be permitted to send a reminder notice via text message/WhatsApp message 45 days after the original notice is sent. *See Barron*, 2022 U.S. Dist. LEXIS 89904, at *13 (noting that "reminder notices have been allowed in other cases" and authorizing reminder notice in similar case involving H-2A migrant truck drivers); *Chaves v. Winn-Dixie Montgomery, LLC*, No. 16-1933 Section: A(3), 2018 U.S. Dist. LEXIS 247005, at *3 (E.D. La. Nov. 1, 2018) (authorizing reminder notice due to "the remoteness of potential opt-in members").

### III.     Information Needed to Facilitate Notice

Plaintiffs request that the Court order Defendants to provide Plaintiffs all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), of similarly situated H-2A truck drivers within fourteen (14) days in order to facilitate the issuance of the notice. Such information is routinely ordered produced in FLSA

13

collective actions. *See Lopez*, 2023 U.S. Dist. LEXIS 191844, at *9 (names, U.S. and foreign addresses, cell phone and WhatsApp numbers in case involving H-2A workers); *Hernandez*, 2024 U.S. Dist. LEXIS 205915, at *8 (names, addresses, telephone numbers, WhatsApp contact information, email addresses in case involving H-2A workers). Plaintiffs request that Defendants be ordered to provide this information in electronic form, if available. (*See* Ex. 8 - Cora Texas 30(b)(6) Dep. at 128:9-19 (noting that Mexican address records for H-2A truck drivers are entered in QuickBooks).)

## CONCLUSION

In accordance with 29 U.S.C. § 216(b), Plaintiffs respectfully request that this Court authorize notice of this FLSA action and an opportunity to opt-in be sent to similarly situated H-2A truck drivers employed by the Defendants within the last three (3) years. To effectuate notice, Plaintiffs further request that this Court (1) approve the proposed collective action notice attached as Exhibit 1 and the Plaintiffs' proposed methods of distribution; (2) order Defendants, within fourteen (14) days of the Court's order, to produce all names, addresses (U.S. and foreign), email addresses, telephone numbers (U.S., foreign, cell phone, and WhatsApp), for all H-2A workers employed by Defendants as truck drivers within the last three (3) years; and (3) grant a period of 90 days from the date on which Plaintiffs send the notice for individuals to return their consent forms.

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone: (828) 379-3169
Email: jim@dawsonmorton.com

14

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.
Berkeley, CA  94710
Phone: (404) 590-1295
Email:  dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email:  dan@estesdavislaw.com