UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ERNESTO JIMENEZ-GONZALEZ and JOSE ALBERTO TORRES-MARTINEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No. 3:24-cv-00820-SDD-RLB |
| Plaintiffs, | JUDGE SHELLY D. DICK |
| v. | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| CORA TEXAS GROWERS AND HARVESTERS AGRICULTURAL ASSOCIATION, INC. and CORA TEXAS MANUFACTURING COMPANY, LLC, | CLASS ACTION |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

Plaintiffs are truck drivers who hauled sugarcane by semi-truck for Defendants. Plaintiffs were brought to the United States by Defendants pursuant to the H-2A temporary foreign worker visa program. Plaintiffs contend that Defendants breached their and other truck drivers' employment contracts and violated their rights under the Louisiana Wage Payment Act ("LWPA"), LA. REV. STAT. §§ 23:631, *et seq.* (ECF No. 1 - Compl. ¶¶ 85-96.)[1] Plaintiffs seek the Court's determination that their breach of contract and LWPA claims may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3).

---

[1] Plaintiffs also allege the Defendants violated the Fair Labor Standards Act. Plaintiffs have filed a separate motion for 29 U.S.C. § 216(b) notice to similarly situated workers. (ECF No. 32.)

## THE PROPOSED CLASS

The proposed class, represented by Plaintiffs Ernesto Jimenez-Gonzalez and Jose Alberto Torres-Martinez, consists of:

**All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2021, 2022, 2023, and/or 2024 sugarcane seasons.**

During the 2021-2024 sugarcane seasons, Defendants recruited and hired more than 200 truck drivers from Mexico each year.

## BACKGROUND AND FACTS

Plaintiffs' complaint contends that Defendants annually brought more than 200 truck drivers from Mexico under the H-2A visa program, denied them overtime pay, and ultimately paid them lower wages then they were legally owed.  The H-2A visa program allows employers to recruit and hire foreign workers on temporary visas if U.S. workers are not available to perform the job and if the wages and working conditions offered will not adversely affect the wages or working conditions of U.S. workers similarly employed. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 20 C.F.R. § 655.100.  Employers seeking H-2A visas must submit a proposed temporary labor certification application to the federal government, called an ETA-790 "clearance order."  *See* 20 C.F.R. § 655.122 (specifying minimum terms which must be contained in the job offer).  The ETA-790 clearance orders, as well as federal regulations, establish the minimum benefits, wages, and working conditions that apply to the employment of foreign workers, and form the employment contracts at issue in this case.  (Cora Texas 30(b)(6) Dep. at 37:2-5, 57:6-11) (attached as Ex. 8) (confirming that ETA-790s were considered to be the work contracts for the 2021-2024 seasons); 20 C.F.R. § 655.122(q) ("The work contract at a minimum will be the terms of the job order and any obligations required under 8 U.S.C. 1188, 29

2

CFR part 501, or this subpart."); *see also Alfaro-Huitron v. Cervantes Agribusiness,* 982 F.3d 1242, 1248 (10th Cir. 2020) ("'[T]he required terms of the [clearance] order and the certified Application for Temporary Employment Certification' became their work contracts.") (quoting 20 C.F.R. § 655.122(q)); *Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) ("[T]he clearance orders ultimately become the contract between the employers and [the H-2A workers]."); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341-42 (5th Cir. 1985).

Each year from 2021 through 2024, Defendants recruited more than 200 H-2A truck drivers from Mexico and employed them pursuant to the same job title and subject to the same terms and conditions of employment set forth in the Defendants' ETA-790 clearance order filings. (Exs. 2-5) (ETA-790 applications completed by Defendants from 2021-2024 to obtain H-2A visas for the Plaintiffs and other truck drivers); *see also* Defs.' Resp. to Pls.' Interrog. No. 1 (stating that between 211 and 246 H-2A truck drivers were employed each year between 2021 and 2024) (attached as Ex. 6). The Plaintiffs and other H-2A truck drivers all hauled harvested sugarcane by semi-truck. (Ex. 8 - Cora Texas Ass'n. 30(b)(6) Dep. at 17:4-18:8, 20:4-7.) ("Q. Do all the truck drivers do the same type of work? A. Yes. They do the work that is approved in the ETA-790.") The same job title, wage rate, and terms and conditions under the same written work contracts applied to all of Defendants' H-2A truck drivers each year. Those contracts promised, *inter alia*, the following:

- All workers would be paid the highest wage rate in effect at the time the work is for every hour or portion thereof worked during a pay period. 20 C.F.R. §§ 655.120, 655.122(l);

- Deductions for items that are primarily for the benefit of the employer would not reduce workers' wages below the minimum amounts required by the H-2A program. 20 C.F.R. § 655.122(p); and

3

- The employer would comply with applicable Federal, State, and local laws and regulations.  20 C.F.R. § 655.135(e).

The Defendants also promised as part of the written contracts that "[o]vertime will be paid when required by law." (Ex. 2 – 2021 ETA-790 at CORA TEXAS - 000023); (Ex. 3 – 2022 ETA-790 at CORA TEXAS – 000110); *see also* (Ex. 4 – 2023 ETA-790 at CORA TEXAS – 000222) (promising overtime pay for "non-exempt work activities"); (Ex. 5 – 2024 ETA-790 at CORA TEXAS – 00261 (same).)

Plaintiffs allege that Defendants breached their employment contracts with respect to all truck drivers.  First, Defendants failed to pay the Plaintiffs and other H-2A truck drivers the correct hourly wage rate for driving heavy tractor-trailer trucks.  Rather, in 2021 and 2022 Defendants paid Plaintiffs and other truck drivers the adverse effect wage rate ("AEWR") for *agricultural* workers of $11.88 per hour in 2021 and $12.45 per hour in 2022 instead of the $20.24 per hour required in 2021 or the $23.70 per hour required in 2022 for heavy tractor-trailer truck drivers.  (Ex. 2 – 2021 ETA-790); (Ex. 3 – 2022 ETA-790); (ECF No. 1 - Compl. ¶¶ 35-37).  In 2023 Defendants paid the Plaintiffs and other class members a higher wage rate, for heavy tractor-trailer truck drivers, but still paid a rate that was less than the required $24.69 per hour truck driver rate for the area of employment (Iberville Parish).  (Ex. 4 – 2023 ETA-790); (ECF No. 1 - Compl. ¶ 37.)  In 2024 Defendants again paid a higher heavy tractor-trailer truck driver wage rate but not the required rate of $25.60 per hour for Iberville Parish.  (Ex. 5 – 2024 ETA-790.)  These same violations occurred for each truck driver, each year.

Second, the Plaintiffs allege they and other H-2A truck drivers were not properly reimbursed for required expenses.  (ECF No. 1 - Compl. ¶¶ 54-63, 90.)  The Plaintiffs and other H-2A truck drivers incurred several costs required for their employment prior to their first week of work each year.  Plaintiffs and other truck drivers paid application fees to be eligible to work

for Defendants each season, fees for medical examinations for their CDL truck driving license which Defendants required, fees for the issuance of the CDL truck driving license, transportation and hotel expenses associated with obtaining the H-2A visa and for traveling to Louisiana, border crossing fees, and fees for United States cell phones in order to be able to receive work instructions from Defendants' supervisors. (ECF No. 1 - Compl. ¶¶ 4, 54-63); (Ernesto Jimenez-Gonzalez Dep. at 21:18-23, 44:4-45:1, 100:10-101:8) (attached as Ex. 12); Jose Alberto Torres-Martinez Dep. at 43:20-44:16, 55:6-57:25 (attached as Ex. 13); (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 20:8-19) (CDL license or Mexican equivalent required). Defendants reimbursed some of these expenses to all truck drivers uniformly, as detailed in a spreadsheet they maintained (attached as Ex. 14), and acknowledged that "[t]he method to determine the amount of reimbursement for the truck drivers between 2021 and 2024 was the same with respect to all of the H-2A workers." (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 73:5-9.) The spreadsheet shows that no reimbursement was provided for application fees, medical examination fees associated with CDL licensing, fees for the issuance of the required CDL license, or telephone expenses to any truck driver. Defendant Cora Texas Growers and Harvesters Agricultural Association, Inc., which handled the payroll, acknowledged that the policy and practice between 2021 and 2024 was not to reimburse H-2A truck drivers for these expenses. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 67:3-69:10, 92:17-93:10) (medical exams, license fees, and telephone charges not reimbursed). The failure to reimburse expenses resulted in Plaintiffs and other truck drivers earning less than their contractually promised wages in the first workweek each season. (ECF No. 1 - Compl. ¶ 90.)

Third, Plaintiffs allege that they and other truck drivers' employment contracts were breached when Defendants did not pay them overtime wages. Defendants' H-2A truck drivers

regularly worked more than 40 hours in a workweek.  (*See, e.g.*, Exs. 9-11 (sample checkstubs for Plaintiffs and class member Miguel Martinez-Villalobos showing hours worked); Ex. 8 - Cora Texas Ass'n. 30(b)(6) Dep. at 58:16-19.)  Defendants' practice and policy was not to pay overtime wages to truck drivers because they claimed all truck drivers were exempt from overtime.  (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 58:20-59:19; Ex. 7 - Defs.' Resp. to Pls.' Req. for Admis. No. 1; Exs. 9-11 (sample checkstubs).)  Plaintiffs allege that they and other truck drivers were owed overtime wages and Defendants' practice and policy of not paying overtime violated Plaintiffs' and other truck drivers' contractual rights.  (ECF No. 1 - Compl. ¶ 90.)

In addition to alleging that these practices and policies breached Plaintiffs' and other truck drivers' employment contracts, Plaintiffs also allege that Defendants' failure to pay them and the other class members the proper hourly wage rate for heavy tractor-trailer truck drivers violated the LWPA.  (ECF No. 1 - Compl. ¶ 94.)  Likewise, Plaintiffs allege that Defendants' reimbursement policy resulted in them and other class members earning less than was owed pursuant to their contracts, also in violation of the LWPA.

## ARGUMENT

Plaintiffs seek Rule 23 class certification for their breach of contract and LWPA claims.  (ECF No. 1 - Compl. ¶¶ 85-96) (Counts II and III).  A party seeking class certification must show that "(1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a).  The proposed class must also fit one of the three categories enumerated in Rule 23(b).  Plaintiffs meet the requirements

of Rule 23(b)(3) and propose certification pursuant to that provision, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Class actions exist "to conserve the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion . . . ." *Gen. Tel. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). A district court has "'broad discretion when deciding a motion for class certification.'" *Lewis v. Cain*, 324 F.R.D. 159, 167 (M.D. La. 2018) (quoting *Dockery v. Fischer*, 253 F. Supp. 3d 832, 845 (S.D. Miss. 2015)). While the district court must "'conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class,'" *Id.* (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012)), Plaintiffs are not required to show that questions common to the class "will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). At this motion stage, "Rule 23 grants . . . no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466.

In this case, the proposed class of over 200 truck drivers from Mexico meets the prerequisites of numerosity, commonality, typicality, and adequacy. Furthermore, as the truck drivers were paid alike, common questions of law and fact predominate, and a class action would be far superior to any other method of adjudicating the legal claims of the more than 200 H-2A truck drivers who worked for Defendants between 2021 and 2024 pursuant to identical employment contracts.

## I.    Plaintiffs Satisfy All Prerequisites for a Class Action.

### A.  A Readily Identifiable and Ascertainable Truck Driver Class Exists.

As this Court has stated, [i]t is a matter of clear precedent that, to maintain a class action, the proposed class must be adequately defined and clearly ascertainable . . . ." *Carroll v. SGS Auto. Servs.*, No. 16-537-SDD-RLB, 2020 U.S. Dist. LEXIS 223674, at *7 (Nov. 30, 2020). "The class definition must be sufficiently definite in that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* The proposed class here consists of individuals employed as tractor-trailer truck drivers pursuant to H-2A visas obtained by the Defendants between 2021 and 2024—an easily ascertainable group of workers. Defendants have already admitted that all of their truck drivers during that time period worked pursuant to H-2A visas and have identified the number of H-2A truck drivers employed each year between 2021 and 2024. (Ex. 8 - Cora Texas 30(b)(6) Dep. at 23:10-24:3); (Defs.' Resp. to Pls.' Interrog. No. 1 (stating that between 211 and 246 H-2A truck drivers were employed each year between 2021 and 2024).) Defendants maintain this information, including workers' addresses in Mexico, in their QuickBooks payroll system. (Ex. 8 - Cora Texas 30(b)(6) Dep. at 128:9-19.)

### B.  More Than 240 Truck Drivers Makes the Class So Numerous that Joinder of All Members is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement "'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Dockery*, 253 F. Supp. 3d at 846 (citation omitted). "Courts must consider 'the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs' claim.'" *Id.* (citation omitted).

The proposed class in this case is more than 200 individual H-2A temporary foreign workers who maintain their permanent residences in Mexico and who worked for Defendants on a seasonal basis between 2021 and 2024.  (Defs.' Resp. to Pls.' Interrog. No. 1 (stating that between 211 and 246 H-2A truck drivers were employed each year between 2021 and 2024); Ex. 8 – Cora Texas 30(b)(6) Dep. at 21:25-22:16 (noting that all truck drivers come from Mexico).)  Courts analyzing cases with similar claims and similar groups of foreign workers with temporary employment visas have found numerosity requirements were easily met.  *See, e.g., Casilao v. Hotelmacher LLC*, No. CIV-17-800-SLP, 2021 U.S. Dist. LEXIS 188177, at *15 (W.D. Okla. Sept. 30, 2021) (finding numerosity met for proposed class of 23 foreign H-2B workers); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (joinder of H-2A workers from various parts of Mexico "highly impracticable"); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006) (finding joinder impracticable for class of migrant guest workers from Guatemala and Mexico).  In addition, unfamiliarity with the U.S. legal system and a lack of financial means to bring individual litigation also favor a numerosity finding.  *See Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 377 (D.S.C. 2015) (finding numerosity met for class of between 215 and 584 H-2B workers "who permanently reside in a foreign country, likely lack financial resources, lack familiarity with the U.S. Court system and have relatively small claims"); *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338-39 (M.D. Tenn. 2008).  Plaintiffs here satisfy the numerosity requirement of Rule 23(a)(1).  *See Lewis*, 324 F.R.D. at 168 ("[C]lasses containing more than 40 members are generally large enough to warrant certification.").

### C.  Defendants Treated the Truck Drivers Similarly and There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2). Commonality requires that class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted). As this Court stated in *Lewis*, "[t]o determine whether Plaintiffs present 'common questions of law and fact, a court must trace the class claims and conclude that the common questions, and answers, will resolve them without the need for additional extensive individualized inquiry.'" *Lewis*, 324 F.R.D. at 169 (quoting *Dockery*, 253 F. Supp. 3d at 849).

In this case, both proposed class claims—breach of the employment contracts and violation of the LWPA—stem from Defendants' policies and practices described above that applied to all H-2A truck drivers who make up the proposed class. Defendants' policies and practices toward the truck driver created several common questions, the resolution of which will apply to all members of the proposed class:

    (a) Whether in 2021 and 2022 Defendants paid the Plaintiffs and other class members an illegally low agricultural adverse effect wage rate rather than the higher wage rate that applies to heavy and tractor-trailer truck drivers;

    (b) Whether in 2023 and 2024 when Defendants did pay a heavy and tractor-trailer truck driver wage rate, did they still pay less than the legally required wage rate for heavy and tractor-trailer truck drivers employed in Iberville Parish;

    (c) Whether Defendants' policy and practice of not reimbursing certain expenses incurred by Plaintiffs and other H-2A truck drivers—expenses that Plaintiffs contend primarily benefited Defendants—resulted in Plaintiffs and other class members not earning the contractually promised wage rate during their first workweeks;

    (d) Whether the Defendants' were legally obligated to pay the Plaintiffs and other class members overtime wages when they worked more than forty (40) hours in a workweek and whether this contractual obligation was breached; and

(e) Whether Defendant Cora Texas Manufacturing Company, LLC was an "employer" of the Plaintiffs and other class members within the meaning of the H-2A regulations and the LWPA.

These common questions are appropriate for class action treatment because they share a common resolution and will be resolved by common proof. For example, whether Defendants' breached workers' contracts and violated the LWPA by having a policy of paying the Plaintiffs and other H-2A truck drivers the *agricultural* Adverse Effect Wage Rate rather than the much higher wage rate that applied to heavy tractor-trailer truck drivers turns on the nature of Defendants' business operations and not on individual information for any specific class member. It is undisputed, for example, that all class members performed the same truck driving work. (Ex. 8 - Cora Texas Ass'n. 30(b)(6) Dep. at 17:4-18:8, 20:4-7.) ("Q. Do all the truck drivers do the same type of work? A. Yes. They do the work that is approved in the ETA-790.") Plaintiffs allege that Defendants misrepresented the nature of their business and the available employment position when they applied to employ foreign workers in the H-2A visa program. (ECF No. 1 - Compl. ¶¶ 2, 40, 42-44, 50.) By improperly classifying their business operations as "farming" and the truck driving work as "agricultural equipment operator," Defendants paid the Plaintiffs and other class members illegally low wage rates. (*Id.*) Even later when Defendants listed the position as truck driving, Defendants paid all truck drivers an improper wage rate. Whether Plaintiffs or Defendants are correct regarding the applicable wage rate will be determined later, but for now all that is important is that the resolution of the issue will not depend on any individual inquiries regarding individual truck drivers. Rather, the resolution will turn on the nature of Defendants' business operations, and whether the hauling of sugarcane in semi-trucks performed by the class members was "agricultural" within the meaning of the applicable laws.

Likewise, issues of expense reimbursement will share a common resolution and can be resolved by common proof. Defendants admit they did not reimburse Plaintiffs and proposed class members for certain pre-employment expenses. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 67:3-69:10, 92:17-93:10) (medical exams, license fees, and telephone charges not reimbursed to truck drivers). Whether Plaintiffs or Defendants prevail on the reimbursement issue turns on whether the expenses were primarily for the benefit or convenience of the Defendants, which is a legal question that will apply to *all* truck drivers. *Arriaga*, 305 F.3d at 1242-44; *Antonio-Benito v. Lowry Farms, Inc.*, No. 1:20-cv-1039, 2021 U.S. Dist. LEXIS 2459119, at *9 (W.D. Ark. Aug. 9, 2021) (certifying Rule 23 class on behalf of H-2A workers because "members share common questions regarding whether Defendants properly reimbursed each worker"); *Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 U.S. Dist. LEXIS 55003, at *43 (W.D. Ark. May 20, 2011) (failure to reimburse H-2A workers a breach of H-2A work contract). This inquiry will be common and identical with respect to all class members.

Similarly, whether Defendants breached the contractual promises to comply with Federal law and to pay overtime wages "when required by law" turn on whether overtime wages were owed for the work performed in Defendants' business operations, not on facts or job duties of any individual truck driver. Defendants' practice and policy was not to pay overtime wages to Plaintiffs or any other H-2A truck driver because Defendants contend hauling sugarcane in semi-trucks was exempt from overtime. (Ex. 8 - Cora Texas Ass'n 30(b)(6) Dep. at 58:20-59:19; Ex. 7 - Defs.' Resp. to Pls.' Req. for Admis. No. 1.) A determination of whether the agricultural exemption applies will not turn on facts specific to a particular truck driver, but rather on the nature of Defendants' business. *See Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 587-89 (5th Cir. 1967) (holding that drivers who hauled harvested sugarcane from fields to the sugar mill were

not exempt from overtime under the FLSA's agricultural exemption because the work was not performed "on a farm" nor were the employers "farmers"); 29 C.F.R. § 780.133 ("The work performed by a farmers' cooperative association is not work performed 'by a farmer' but for farmers. Therefore, employees of a farmers' cooperative association are not generally engaged in any practices performed 'by a farmer' . . . ."); *Tullous v. Texas Aquaculture Processing Co., LLC*, 579 F. Supp. 2d 811, 817-19 (S.D. Tex. 2008) (analyzing the business structure of the defendant and determining that it did not meet the overtime exemption because it was not "a farmer"). As such, the contractual promise to pay overtime either applies or does not with respect to *all* class members.

Given the numerous questions of law that are common to the entire proposed class in this case and given that the injuries the named Plaintiffs complain of on behalf of the class arise from Defendants' uniform policies and practices, the commonality requirement of Rule 23(a)(2) is satisfied.

### D. The Claims of the Representative Parties Are Typical of the Class's Claims.

Rule 23(a)(3) requires that the class representatives' claims be typical of those of the class as a whole. Fed. R. Civ. P. 23(a)(3). "The claims of all class members need not be identical. However, typicality demands that claims 'arise from a similar course of conduct and share the same legal theory.'" *Lewis*, 324 F.R.D. at 169 (quoting *Cole v. Livingston*, No. 14-698, 2016 U.S. Dist. LEXIS 77435, at *8 (S.D. Tex. June 14, 2016)).

The named Plaintiffs' claims in this case are typical of the claims of the proposed class. The named Plaintiffs were employed in the same truck driving positions, pursuant to the same contracts as the other H-2A truck drivers, they shared the same job title, received the same wages, and their claims arise from Defendants' uniform policies and practices applicable to the

13

proposed class of truck drivers.  The named Plaintiffs seek to enforce the same contract terms

shared by all truck drivers, and to vindicate their rights under the LWPA for violations that

Defendants committed against all proposed class members. As such, the class representatives'

claims are typical of those of the entire class.

### E.  The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class's Interests.

Rule 23(a)(4) and due process require that class representatives and their counsel in a

proposed class action "fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4).  "'The adequacy requirement looks at both the class representatives and their

counsel.'"  *Alex A. v. Edwards*, No. 22-573-SDD-RLB, 2023 U.S. Dist. LEXIS 154148, at *19

(M.D. La. Aug. 31, 2023) (quoting *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th

Cir. 1986)).  A court should determine "the (1) zeal and competence of representatives' counsel;

and (2) willingness and ability of representatives to take an active role in controlling litigation

and protecting the interests of absentees." *Id.*  "To satisfy the adequacy requirement, 'there must

be no significant conflict of interest between named plaintiffs and the absent class members.'"

*Id.* (quoting *J.D. v. Nagin*, 255 F.R.D. 406, 415 (E.D. La. 2009)).

Rule 23(g) requires a court to appoint class counsel when certifying a class.  Fed. R. Civ.

P. 23(g).  The court must consider: "(i) the work counsel has done in identifying or investigating

potential claims in the action; (ii) counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.*

First, Plaintiffs' counsel prepared the Complaint and filed this action in October of 2024 and

have engaged in Phase I class discovery since that time related to class certification issues.

(Declaration of James Knoepp ¶ 8) (attached as Ex. 15); (Declaration of Dawson Morton ¶ 8)

(attached as Ex. 1).  Counsel served requests for production, interrogatories, and requests for

admission, and took a 30(b)(6) deposition of Defendant Cora Texas Growers and Harvesters

Agricultural Association, Inc. related to class certification issues.  (Ex. 15 – Knoepp Decl. ¶ 8.)

Counsel also responded to written discovery served to the Plaintiffs and traveled to Mexico to

defend the depositions of the two named Plaintiffs.  (Ex. 1 – Morton Decl. ¶ 8.)  Second,

Plaintiffs' counsel have extensive experience representing foreign workers in federal class action

litigation, including in cases like this one on behalf of workers employed subject to temporary

visas.  (Ex. 1 – Morton Decl. ¶¶ 3-5); (Ex. 15 – Knoepp Decl. ¶¶ 4-6).  Third, counsel are very

knowledgeable of the law as it applies to H-2A workers, including the claims in this case related

to unreimbursed expenses and the failure to pay overtime wages.  (Ex. 1 – Morton Decl. ¶¶ 4-5);

(Ex. 15 – Knoepp Decl. ¶¶ 5-6).  Finally, counsel have sufficient funds to advance all

appropriate costs of this litigation and will vigorously and competently prosecute this action on

behalf of the class.  (Ex. 1 – Morton Decl. ¶¶ 7-8); (Ex. 15 – Knoepp Decl. ¶¶ 7-8).

     With respect to the named Plaintiffs, they have no conflicts with the other class

members' and their interests are the same.  *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d

620, 625-26 (5th Cir. 1999).  Plaintiffs understand their claims and those they are seeking to

bring on behalf of the proposed class.  (Ex. 12 - Jimenez-Gonzalez Dep. at 85:6-11, 87:1-15,

88:7-90:20, 99:1-10) (affirming ability to represent other workers, describing work performed

by Plaintiff and approximately 200 other truck drivers each year, lack of overtime pay, and

payment of incorrect hourly wage rate); (Ex. 13 – Torres-Martinez Dep. at 8:8-9-20, 56:14:57:2

(affirming ability to represent other workers, describing claims for payment of incorrect hourly

wage rate and regularly working in excess of 40 hours per week).  Both named Plaintiffs have

participated in this action since its inception, have responded to Defendants' written discovery

requests, and sat for their depositions. The named Plaintiffs will not benefit in any way that will prove harmful to the interests of other class members. All class members will benefit from the relief sought by receiving damages for the breach of contract and violations of the LWPA. Plaintiffs satisfy the adequacy requirement of Rule 23(a).

## II. Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Plaintiffs must also show their proposed class meets the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### A. Common Questions of Law and Fact Predominate.

The predominance requirement of Rule 23(b) is similar to, but more demanding than, Rule 23(a)'s commonality requirement, discussed *supra*. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

Common questions of law and fact do predominate for both the breach of contract and LWPA claims because the dominant issue for all class members is the legality of Defendants' pay practices, which Defendants applied uniformly to all truck drivers. As already discussed, Defendants had a common policy and practice of: (1) paying *all* truck drivers in 2021 and 2022 the Adverse Effect Wage Rate for agricultural field workers rather than the wage rate for heavy and tractor-trailer truck drivers; (2) paying an incorrect tractor-trailer truck driver wage rate to *all* truck drivers in 2023 and 2024; (3) not paying overtime to *any* truck drivers based on a contention by Defendants that the agricultural exemption applied; and (4) not reimbursing specific categories of

16

expenses with respect to *any* truck drivers. Whether these policies breached Plaintiffs' and the proposed class members' employment contracts and violated the LWPA turns on legal issues the resolution of which will apply to all of the Defendants' truck drivers. *See Casilao*, 2012 U.S. Dist. LEXIS, at *30 ("Plaintiffs have shown common issues govern Defendants' pay obligations under the governing H-2B rules, regulations and documents submitted by Defendants in relation thereto. Therefore, the Court concludes common issues predominate with respect to the breach of contract claims."); *Moodie*, 309 F.R.D. at 379-80 ("Here, common questions of law and fact predominate. Indeed, the claims in the Complaint raise only issues common to the class: (1) whether the contractual wage in Defendant's employment contracts with H-2B workers was the H-2B prevailing wage; . . . (3) whether pre-employment visa and transportation costs were *de facto* deductions from wages that caused wages to fall below the agreed upon wage . . . . There are no issues specific to individual Plaintiffs or individual members of the class.").

The only individual issue with respect to Plaintiffs' and the proposed class members' claims is the amount of damages that would be owed if Plaintiffs prevail because each class member worked a slightly varying number of hours each week. (*See, e.g.,* Ex. 9-11 (sample checkstubs)). But even that issue is easily resolved on a class-wide basis since it is a matter of simple math to compute, for example, what is owed to class members if they were paid an illegally low wage rate for a certain number of hours in a week, or what is owed for a failure to pay overtime wages for that same number of hours. *See Antonio-Benito*, 2021 U.S. Dist. LEXIS 245919, at *13 (finding common questions predominated in H-2A breach of contract case and noting "[t]he amount of damages claimed by each proposed class member may differ, but the members share common questions regarding Defendants' liability"). That process is made even easier since Defendants maintained electronic timekeeping and payroll records. (Ex. 8 - Cora

Texas 30(b)(6) Dep. at 118:19-120:22) (describing the payroll process and noting that the electronic systems are "set up to where you can customize pretty much any way you want to track an individual" and "[y]ou can find this information very easily").  Individual determinations of damages do not defeat class certification where common legal and factual issues related to liability clearly predominate, as they do here.  *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003) ("[R]elatively few motions to certify a class fail because of disparities in the damages suffered by class members."); *Moodie*, 309 F.R.D. at 380 (noting that individual damages determinations do not defeat predominance and that the requirement is met "where common questions predominate over individual questions *as to liability*") (emphasis in original).

**B.  A Class Action Is Superior to Other Methods of Adjudication.**

The superiority requirement of Rule 23(b)(3) is analyzed through four factors: (1) the interest of class members in individually controlling the prosecution of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the desirability of having the litigation of the claims in the particular forum where it has been filed, and (4) the difficulties likely to be encountered in management of the class action. FED. R. CIV. P. 23(b)(3)(A)-(D).  Here, a class action is superior to any other method of adjudicating this dispute.

First, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. Class members maintain their permanent homes in Mexico where many class members are currently living since sugarcane hauling occurs from approximately September through December each year.  (Exs. 2-5 (ETA-790 Clearance Orders showing dates of employment each year).)  Class members are Spanish speakers who lack familiarity with the U.S. legal system.  (Ex. 12 - Jimenez-Gonzalez Dep. at

18

86:9-21.)  Class members are likely unaware of their rights to prosecute these claims and are

likely unable to bring their own individual actions.  Courts have regularly found that class

litigation is superior in cases brought by temporary foreign workers for these same reasons. *See,*

*e.g.*, *Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196, 204-05 (W.D. Mo.

2022) (finding superiority met in case involving H-2A workers "who have little experience with

the U.S. legal system"); *Garcia v. Stemilt AG Servs., Inc.*, 2022 U.S. Dist. LEXIS 125068, at

*15 (E.D. Wash. July 14, 2022) (proceeding on class-wide basis superior where class consisted

of H-2A workers who resided in Mexico and had  "limited English proficiency, financial

resources, and understanding of this country's legal system"); *Recinos-Recinos*, 233 F.R.D. at

482 (finding superiority requirement met where class members who were employed pursuant to

H-2B visas "reside in Mexico and Guatemala, are not fluent in English, and lack sufficient

resources to bring an individual lawsuit"); *see also Menocal v. GEO Group, Inc.*, 882 F.3d 905,

915 (10th Cir. 2018) ("Considerations such as class members' limited understanding of the law,

limited English skills, or geographic dispersal therefore weigh in favor of class certification.").

Second, no other litigation concerning this controversy has been commenced against the

Defendants by any member of the proposed class.  Third, it is desirable to conduct the litigation

in this forum. Defendants maintain their offices and conduct significant business in this district

and important witnesses employed by the Defendants and third parties are also located in this

district.  Fourth, the benefits of maintaining this action on a class basis far outweigh any

administrative burden. Class litigation is no less manageable in this case than in other cases in

which claims of temporary foreign visa workers have been certified under Rule 23.  *See, e.g.*,

*Moodie*, 309 F.R.D. at 380 ("While the claims that Plaintiffs propose to class here are state law

claims, Plaintiffs also bring FLSA claims raising federal questions.  It is more efficient to

resolve both sets of claims in a single forum and single litigation than to have parallel proceedings."); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 289 (W.D. Mich. 2001) (use of class action mechanism in case involving migrant workers "likely to achieve economies of time, effort and expense in resolving legal issues of class members"); *Recinos-Recinos*, 233 F.R.D. at 482.  Because the claims of the Plaintiffs and proposed class members are based on a common set of facts, testimony will not be needed from all truck drivers. Requiring separate prosecutions would likely result in far greater manageability issues, including duplicative discovery procedures, repeated adjudication of similar controversies, and excessive costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted. Certification is proper for the claims set forth in Counts II and III of the Complaint on behalf of a class defined as: All individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2021, 2022, 2023, and/or 2024 sugarcane seasons.  Plaintiffs should be named class representatives and counsel for the Plaintiffs should be appointed as Class Counsel.

Respectfully submitted,

**/s/ James M. Knoepp**
James M. Knoepp* (Lead Attorney)
South Carolina Bar No. 102757
*Admitted Pro Hac Vice*
1612 Crestwood Drive
Columbia, SC 29205
Telephone:  (828) 379-3169
Email:  jim@dawsonmorton.com

**/s/ Dawson Morton**
Dawson Morton
California Bar No. 320811
*Admitted Pro Hac Vice*
1808 Sixth St.

20

Berkeley, CA  94710
Phone: (404) 590-1295
Email:  dawson@dawsonmorton.com

**/s/ Daniel Davis**
Daniel Davis, LA Bar No. 30141
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Fax: (225) 384-5419
Email:  dan@estesdavislaw.com