**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ERNESTO JIMENEZ-GONZALEZ and JOSE ALBERTO TORRES-MARTINEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,**

**VERSUS**

**CORA TEXAS GROWERS AND HARVESTERS AGRICULTURAL ASSOCIATION, INC. and CORA TEXAS MANUFACTURING COMPANY, LLC**

**CIVIL ACTION NO. 3:24-CV-00820**

**JUDGE SHELLY D. DICK**

**MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.**

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR 29 U.S.C. § 216(B) NOTICE OF SIMILARLY SITUATED WORKERS AND FOR DISCLOSURE OF CONTACT INFORMATION**

NOW INTO COURT, through undersigned counsel, come defendants, Cora Texas Growers and Harvesters Agricultural Association, Inc. (the "Cora Association") and Cora Texas Manufacturing Company, LLC (collectively "Defendants"), who respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for 29 U.S.C. § 216(b) Notice of Similarly Situated Workers and for Disclosure of Contact Information.

For the reasons addressed more fully below, Plaintiffs' request to certify this collective action must be denied to the extent it relates to the Plaintiff's reimbursement claims. Further, and for the additional reasons set forth below, Defendants oppose portions of Plaintiffs requested notice.

## I. BACKGROUND

Plaintiffs, Ernesto Jimenez-Gonzalez and Jose Alberto Torres-Martinez ("Plaintiffs") allege that they were employed as truck drivers for the Cora Association. Plaintiff Jimenez-

Gonzales was employed in 2019, 2020, 2021, 2022, and 2023.[1] Plaintiff Torres-Martinez was employed in 2021, 2022, and 2023.[2] Neither plaintiff was employed in 2024. Defendant, the Cora Association, is an association of growers and harvesters who engage in the growing of sugarcane and other crops.[3] After sugar cane is harvested, it must be transported from the farm at which it is harvested to the sugar mill for processing. The Cora Association member growers need laborers to haul the sugar cane from the individual farms to the mill, so in all relevant years, the Cora Association sought and obtained temporary labor certifications from the United States Department of Labor for H-2A agricultural workers to transport harvested sugarcane to the mill.

Notwithstanding Plaintiff's repeated applications to work for the Cora Association and acceptance of the terms of those contracts, Plaintiffs now challenge the terms of their employment. On October 2, 2024, Plaintiffs filed this Complaint alleging violations of the Fair Labor Standard Act, seeking to represent a collective action comprising "[a]ll individuals admitted as H-2A temporary foreign workers who were employed by Defendants as truck drivers hauling harvested sugarcane within the state of Louisiana during the 2022, 2023, and/or 2024 sugarcane season." Plaintiffs also allege claims under the Louisiana Wage Payment Act and for breach of contract under state law.[4] The main disputes in the case stem from Plaintiffs' claims that they were misclassified as exempt agricultural workers and instead were owed overtime wages for hours worked in excess of forty in a workweek ("overtime claim"), and that they were not properly reimbursed for pre-employment expenses, resulting in H-2A workers earning less than minimum

[1] R. Doc. 1, ¶ 12; Deposition of Ernesto Jimenez-Gonzales, p. 108 (awaiting certified copy) (attached and hereinafter referenced as "Exhibit 1").
[2] R. Doc. 1, ¶ 13.
[3] Defendant, Cora Texas Manufacturing Company, LLC did not act as the Plaintiffs' employer and did not petition the Department of Labor for any Temporary Labor Certifications.
[4] Plaintiffs' claims under the Louisiana Wage Payment Act and for breach of contract are the subject of their Rule 23 Motion to Certify Class (R. Doc. 33).

wage during their first workweek ("reimbursement claim").[5] Plaintiffs now ask this Court to issue an Order allowing them to notify other similarly situated workers of their overtime and reimbursement claims arising under the FLSA.[6]

## II. LAW AND ARGUMENT

Section 216(b) of the Fair Labor Standards Act (FLSA) provides for collective actions by permitting FLSA actions against employers to "be maintained… by any one or more employees and on behalf of himself or themselves and other employees similarly situated."[7] The purpose of authorizing collective actions under 216(b) is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."[8]

Though FLSA collective actions are generally favored as a means to efficiently resolve claims involving common issues of law and fact among similarly situated employees,[9] a putative class should not be certified where a collective action would present "enormous manageability problems."[10] Where a putative class is too large and diverse, certification "would be an exercise in gross mismanagement of judicial and litigant time and money," ultimately defeating the FLSA collective action's core objective of enhancing judicial efficiency.[11] For this reason, certification must be limited only to those cases in which the named plaintiffs and the putative members of the prospective FLSA class are truly "similarly situated."[12] Accordingly, "the district court's job is

---

[5] R. Doc. 1, ¶ 66.
[6] R. Doc. 32.
[7] 29 U.S.C.A § 216(b).
[8] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008).
[9] *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 466 (S.D. Tex. 2012).
[10] *See Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (finding that certification was inappropriate where the *Lusardi* factors supported the finding that the collective action would present enormous manageability problems due to there being no single decision, policy or plan at issue).
[11] *See Basco*, No. 00-3184, 2004 WL 1497709, at *8.
[12] *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."[13]

"To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively."[14] Consistent with the purpose of promoting judicial efficiency, courts have determined that to be similarly situated, "some identifiable facts or legal nexus must bind the claims."[15] The named plaintiff bears the burden of establishing similarity.[16] As explained by the Fifth Circuit, "such a burden follows from the general burden that a plaintiff bears the burden to prove her case."[17]

As such, the relevant inquiry at the certification stage—and therefore the question before this Court—is whether Plaintiffs have established through competent evidence that they are "similarly situated" to the putative members of the prospective FLSA class they seek to represent. In this case, Plaintiffs fall short of meeting this burden as to their claim for reimbursement of certain expenses. Accordingly, pursuant to the Fifth Circuit's instruction in *Swales* directing district courts to "rigorously scrutinize the realm of 'similarly situated' workers" before certifying a collective action, Plaintiffs' motion must be denied in part.[18]

**A. Plaintiffs' Have Not Borne Their Burden of Showing Potential Opt-In Members Were Victims of a Single Policy for Purposes of Being Similarly Situated as to Their Reimbursement Claim.**

A key consideration in determining whether potential members are "similarly situated" is whether there are "substantial allegations that potential members were together the victims of a

---

[13] *Swales*, 985 F.3d at 440 (5th Cir. 2021); *see also id*. at 434 ("[W]hile a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." (quoting *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500-02 (5th Cir. 2019))).
[14] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (internal citations omitted).
[15] *England*, 370 F. Supp. 2d at 508.
[16] *Valdery-Hughes v. Care & Dev. Ctr., Inc.*, No. 24-1708, 2025 WL 1068258, at *3 (E.D. La. Apr. 9, 2025).
[17] *Swales*, 985 F.3d at 443 n.65.
[18] *Id*. at 434.

single decision, policy, or plan."[19] Plaintiffs have the burden of demonstrating "similarity among the individual situations… some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."[20] In light of the Fifth Circuit's decision in *Swales,* a plaintiff can no longer simply allege the existence of a policy without offering any concrete evidence to substantiate its existence.

Far from carrying their burden, Plaintiffs allege that Defendants maintained a uniform policy or practice of not properly reimbursing expenses during the first work week.[21] However, this statement oversimplifies the nature of this dispute. It is undisputed that the Cora Association had a practice of reimbursing travel expenses and encouraged employees to raise concerns about additional or unreimbursed expenses.[22] Thus it is not enough to simply say that expenses were unreimbursed.[23] Plaintiffs have the burden of presenting evidence sufficient to show that the policy was more than anecdotal, and that its effects were homogeneous, lending it to collective inquiry.[24] Yet, Plaintiffs have not presented evidence showing that their alleged policy lends itself to collective inquiry. Instead, the issue is whether the reimbursements that Plaintiffs received were deficient, depending on each Plaintiffs' particular circumstances, as discussed below. Indeed, Plaintiffs did not even work in 2024, so they cannot expect to be similarly situated to any potential policy that was applied in 2024. Because Plaintiffs have not shown concrete evidence to substantiate the existence of a single, uniform policy related to reimbursement that lends itself to

---

[19] *Hamm v. Acadia Healthcare Co., Inc.*, No. 20-01515, 2022 WL 2713532, at *5 (E.D. La. July 13, 2022).
[20] *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-0043, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992).
[21] R. Doc. 1, ¶ 4.
[22] Cora Association Phase I Rule 30(b)(6) Deposition p, 63 (attached and hereinafter referenced as "Exhibit 2").
[23] *See Basco*, No. CIV.A. 00-3184, 2004 WL 1497709 (finding that plaintiffs failed in their burden of proof because the alleged policy was "anecdotal," and the plaintiffs failed to present evidence to show that the policy was uniformly implemented, that its effects were homogenous, or that it lent itself to collective inquiry).
[24] *See Basco*, No. CIV.A. 00-3184, 2004 WL 1497709, at *7.

collective inquiry, Plaintiffs have not borne their burden of "demonstrat[ing] identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency."[25]

**B. Plaintiffs Have Not Made Any Showing that They Are Similarly Situated with Other Putative Collective Action Members.**

The "similarly situated" inquiry depends upon whether the merits can be answered collectively.[26] Plaintiffs ask this Court for collective action certification for two separate claims under the FLSA: reimbursement and overtime. Though the FLSA provides a cause of action for violations of the minimum wage and overtime provisions, the nature of an overtime claim and a reimbursement claim are distinct. Specifically, when tasked with addressing these issues on the merits, this Court will be required to conduct a separate and distinct analysis for each of these claims, addressing different underlying merits questions. Because there are two distinct FLSA underlying merits question in this case, Plaintiffs have the burden of showing that each can be answered on a class-wide basis. Plaintiff has failed to do so with respect to their reimbursement claim.

The first underlying merits question in the case that the Court would be required to address in connection with Plaintiffs' overtime claim is whether Plaintiffs and the putative class members were properly classified as exempt from overtime pay under the FLSA pursuant to the agricultural workers exemption.[27] Although Defendants vehemently dispute that Plaintiffs were improperly classified, Defendants do not contest that such question may be adjudicated on a class-wide basis.

---

[25] *Loy*, 71 F.4th at 336 (internal citations omitted).
[26] *Id*.
[27] *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC, 2022 WL 1927007, at *17 (W.D. Tex. June 3, 2022) ("While the FLSA mandates that employers pay employees who work more than forty hours per week at a rate of 1.5 times their regularly hourly rate, it exempts 'any employee with respect to his employment in agriculture by a farmer[.]'" (citing 29 U.S.C. §§ 207, 213(b)(13))).

The second question, in contrast to the first, does not have the potential to be adjudicated on a class wide basis. With respect to Plaintiff's reimbursement claim, the second underlying merits question that this Court will be required to address is whether Defendants "failed to pay Plaintiffs and others similarly situated the federal minimum wage as required by the FLSA by failing to reimburse costs incurred for Defendants' benefit, including required specialized drivers' license, medical examination fees, fees related to obtaining H-2A visas, hotel expenses associated with obtaining H-2A visas, recruitment costs, transportation expenses from Mexico to the United States and border crossing fees."[28] The discovery conducted in the case thus far demonstrates that many of the claimed reimbursements cannot be adjudicated on a class-wide basis. The Cora Association's president, Katie Nunez, testified that the H-2A workers were "reimbursed upon arrival for their travel, and that includes their in-country travel from their home to the consulate, their travel from the consulate to the jobsite, the border crossing fee, facilitator fee, if one was paid, the lodging and travel and subsistence rate for the days traveled."[29] Ms. Nunez testified as to her calculation methods, which involved "tak[ing] the hometown of each worker and looking up bus tickets, . . . from their hometown to the jobsite."[30] Necessarily, these amounts differ. Nunez also "look[s] at hotels in the area that they could stay at, and generally, whatever the room rate is, if it's a double room that two workers would be staying in, I divide the nightly rate by two," and that she also looked up bus transportation costs from the respective consulates to the job site.[31] These expenses may also differ depending on which consulate each employee visited, and whether they traveled alone. Nunez further testified that the H-2A workers "were notified that these are estimates and if they have any issues with anything or any proof that they paid more than what

---

[28] R. Doc. 1, ¶ 4.
[29] Exhibit 2, p. 63.
[30] *Id*.
[31] *Id*. at p. 65-66.

was estimated, that they can come to me with the their[sic] receipts, and they'll be reimbursed the difference."[32]

Not only are these claims disparate in nature, but Plaintiffs have also not shown that they are similarly situated to others in the class. For example, Plaintiff Ernesto Jimenez-Gonzales testified that he drove his own car to cross the border to work for the Cora Association in 2023, but he has not shown that all others drove their own vehicles, alone, such that the reimbursements would be equal.[33]

Plaintiffs further claim that reimbursements were owed for other expenses such as commercial driver's licenses and cell phone bills. Defendants dispute that such expenses are owed, but whether they were owed also involves individual assessments, such as whether the employees use commercial driver's licenses for Mexican employment, and whether all workers obtained cell phones, which is not required by the Cora Association.

Because Plaintiffs' reimbursement claims depend on numerous individual factors that are not subject to class-wide adjudication, Plaintiffs have not shown that the H-2A workers are similarly situated with respect to their expense reimbursement claim.

### C. The Relevant Merits Inquiry For Plaintiff's Reimbursement Claim is Highly Individualized and Not Appropriate for Collective Action Certification.

Certification of a collective action is inappropriate where answering the merits questions "requires a highly individualized inquiry into each potential opt-in's circumstances," so that "the collective action would quickly devolve into a cacophony of individual actions."[34] Prior to the Fifth Circuit's decision in *Swales*, district courts followed the *Lusardi* approach to determine

[32] *Id*. at p. 66.
[33] Exhibit 1, p. 49.
[34] *Swales*, 985 F.3d at 442.

whether employees were "similarly situated."[35] After *Swales*, the use of the *Lusardi* approach is not mandatory, but its factors may be useful to "help inform or guide the similarly situated analysis."[36] The *Lusardi* factors include: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[37] Although the district court has discretion regarding certification of a collective action, that discretion is not "unbridled."[38]

**1. The putative plaintiffs' disparate factual and employment settings preclude collective treatment of their individualized reimbursement claims.**

The Fifth Circuit has recognized that, "[i]f answering the merits questions requires a highly individualized inquiry into each potential opt-in's circumstances, then the employees are likely not similarly situated."[39] "The extent to which opt-in plaintiffs' work experiences differ directly influences [the employer's] capacity to prove its statutory defense."[40] As discussed, whether and to what extent reimbursements should be due to putative plaintiffs cannot be adduced by representative evidence. Indeed, for each plaintiff, in order to determine whether a reimbursement would be owed, Defendants would have to obtain evidence regarding (1) what amount in reimbursement was already paid; (2) what differing circumstances necessitate a greater reimbursement (for example, did an employee pay a greater amount for a bus ticket from their home to the nearest consulate); and (3) what evidence each plaintiff has to substantiate expenses. The answer to these questions may differ from plaintiff to plaintiff. Defendants will also have to

[35] *Loy*, 71 F.4th at 336.
[36] *Id*. at 337.
[37] *Swales*, 985 F.3d at 437 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).
[38] *Valdery-Hughes*, No. 24-1708, 2025 WL 1068258, at *2.
[39] *Loy*, 71 F.4th at 336 (internal quotation marks and citation omitted).
[40] *Burke v. Mgmt. & Training Corp.*, No. 316CV00152NBBJMV, 2018 WL 4038115, at *2 (N.D. Miss. Aug. 23, 2018) (citing *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008)).

solicit evidence involving the circumstances surrounding Plaintiffs' use of commercial driver's licenses, including when such license was obtained and whether it is used for Mexican employment. With respect to the claimed cell phone expenses, Defendants will have to determine whether each Plaintiff even acquired a U.S. cell phone, and the contours of their respective phone plans. Accordingly, individualized circumstances predominate the reimbursement issue, making it unsuitable for class treatment.

**2. The various defenses available to the Cora Association are individual to each plaintiff's reimbursement claim.**

"The question at this stage is whether the merits question can be resolved on a collective basis, which is separate from the merits question itself."[41] "[T]he more dissimilar plaintiffs are and the more individuated [the employer's] defenses are, the greater doubts there are about the fairness of a ruling on the merits—for either side—that is reached on the basis of purportedly representative evidence."[42]

Here, the various defenses the Cora Association may assert are individual to each of the Plaintiffs. For example, Defendants are entitled to offset any claimed amount against amounts actually paid. In order to calculate offset, Defendants are entitled to traverse whether the actual reimbursements paid were appropriate,[43] and to traverse the circumstances of the claimed amounts, including through receipts or other evidence of expenses claimed by Plaintiffs. Defendants also have a right to explore whether the claimed expenses for each individual plaintiff are reasonable or are the most economical means of travel in evaluating whether reimbursements are owed.[44]

---

[41] *Valdery-Hughes*, 2025 WL 1068258, at *5.
[42] *Burke*, 2018 WL 4038115 at *2 (citing *Johnson*, 561 F. Supp. 2d at 574).
[43] For instance, if Defendants already paid plaintiffs for an estimated bus ticket, but instead, a Plaintiff rode with a co-worker to the jobsite, the prior reimbursement for the bus ticket must be offset against any now-claimed expenses.
[44] 20 C.F.R. § 655.122(h)(1) ("The amount of the transportation payment must be no less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved.")

Ultimately, the various defenses available to Defendant require individualized inquiries for each plaintiff. "Since this inquiry must be conducted for each potential plaintiff, there is no efficiency gained by trying all factual questions and defenses in a single trial."[45] Thus, Defendants' entitlement to apply individual defenses to determine whether and to what amount any reimbursements may be due, makes collective treatment of the Plaintiffs' reimbursement claim inappropriate.

**3. Fairness considerations prohibit certifying a collective class.**

The *Swales* Court cautioned against the dangers of collective actions: including "(1) the opportunity for abuse (by intensifying settlement pressure no matter how meritorious the action); and (2) the appearance of court-enclosed solicitation of claims (by letting benign notice-giving for case-management purposes warp into endorsing the action's merits, or seeming to, thus stirring up unwarranted litigation)."[46] Accordingly, "considerations of adverse consequences [must] inform the Court's analysis."[47]

One such factor includes considering whether certifying a class is warranted, even in the absence of any indication there is a need for one. As the court in *Spillers v. La. PHS, LLC*, explained:

> While the court cannot and does not require plaintiff to identify every prospective collective action member prior to notice, *Swales* and *JPMorgan Chase & Co.* strongly suggest that some showing is required. Otherwise, the court simply will be stirring up litigation. After *Swales*, it is not business as usual for the heretofore all-but-axiomatic conditional certification of FLSA collective actions. Rather, the Fifth

---

[45] *Brunet v. GB Premium Octg Servs. LLC*, No. 21-1600, 2022 WL 17730576, at *10 (S.D. Tex. Dec. 1, 2022).

[46] *Swales*, 985 F.3d at 442-43; *see also Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 516 (N.D. Tex. 2014) (explaining that the court must ensure that an "employer is not unduly burdened by a frivolous fishing expedition") (citations omitted)); *Simmons v. T-Mobile USA, Inc.*, No. CIV A H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action."); *Knight v. D. Houst., Inc.*, 756 F. Supp. 2d 794, 805 (S.D. Tex. 2010) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)) ("A plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit.").

[47] *Powell v. One Source EHS, L.L.C.*, No. 21-161, 2021 WL 4227064, at *2 (M.D. La. Sept. 16, 2021).

> Circuit intended to rein in the opportunity for abuse of the procedural device by plaintiffs as a means to exert "formidable settlement pressure" on defendants… [I]t must be acknowledged that the unequivocal dictates of *Swales* now require more.[48]

Indeed, "[e]nsuring judicial neutrality and preventing district courts from needlessly stirring up litigation is good cause for a writ [of mandamus] to issue."[49] "[S]imply alleging violations of the law by the same employer is insufficient to justify a collective action."[50] But that is exactly what Plaintiffs have done here, without any showing that other workers suffered any actual expense for which they were not reimbursed. Thus, fairness factors weigh against collective treatment of Plaintiffs' reimbursement claim.

**D. Plaintiffs' Proposed Class Definition is Overly Broad.**

Even if this Court were to determine that collective action certification is appropriate, which Defendants dispute as to the reimbursement claim, the proposed class definition is overly broad and should therefore be limited. Based on the evidence offered in favor of their Motion, Defendants respectfully submit that a more accurate and efficient class of persons to whom notice should be issued are:

> All individuals who applied at a U.S. Consulate for H-2A visas and were admitted to the United States to work as H2-A temporary foreign workers for the Cora Texas Growers and Harvesters Agricultural Association, Inc. during the 2022, 2023, and/or 2024 sugarcane seasons pursuant to job orders H-300-22202-368600, H-300-23185-165619, H-300-24173-139042.

As worded, Plaintiffs' proposed class definition is confusing in that it relates to employment by "defendants," when defendant, Cora Texas Manufacturing Company, LLC never employed

---

[48] *Spillers v. La. PHS, LLC*, No. 21-762, 2022 WL 1675950, at *10 (W.D. La. May 10, 2022).

[49] *In ew A&D Interests, Inc.*, 33 F.4th 254, 257 (5th Cir. 2022) (citing *In re Spiros Partners, Ltd.*, 816 F. App'x 985, 987 (5th Cir. 2020); *White v. Integrated Elec. Techs., Inc.*, Nos. 11-2186, 12-359, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013) ("[G]iving too lenient an approach at the notice stage can lead to an employer being burdened by something that may be no more than a frivolous fishing expedition conducted by the plaintiff at the employer's expense.") (quoting *Clay v. Huntington Ingalls, Inc.*, No. 09-7625, 2012 WL 860375 (E.D. La. March 13, 2012))).

[50] *Harris v. Fee Transp. Servs.*, No. 05-77, 2006 WL 1994586, at *4 (N.D. Tex. May 15, 2006) (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)); *see Green v. Plantation of La., LLC*, No. 10-0364, 2010 WL 5256354, at *7 (W.D. La. Nov. 24, 2010) (quoting *Harris*, 2006 WL 1994586, at *4.

Plaintiffs and never petitioned for any Temporary Labor Certification with the Department of Labor. Because the use of "defendants" may be unclear or confusing to potential plaintiffs, the full name of the employer and reference to the Plaintiffs application to that employer (including the terms of the applicable Job Orders) should instead be used.

**E. Plaintiffs' Proposed Class Definition Misapplies the Statue of Limitations in FLSA Collective Actions.**

Additionally, Plaintiffs' proposed class definition inappropriately spans a three-year period without accounting for the statute of limitations applicable to FLSA collective actions. Unlike a class action filed under Rule 23(c), a collective action under § 216(b) provides a procedure for a plaintiff to affirmatively notify the court of his intention to become party to the collective action by affirmatively opting-in.[51] Consequently, the statute of limitations in a collective action "runs from the opt-in date," and not from the date the named plaintiff originally filed his complaint.[52] Put differently, the statute of limitations for a putative class member's FLSA claims does not stop running until that individual plaintiff specifically opts-in to the action.[53]

Moreover, "Congress did not provide for tolling while the court considers whether to certify a case as a collective action under the FLSA. Rather, Congress expressed concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitation period was tolled by the filing of the originally complaint."[54] As a result, should any collective action class be certified, the temporal breadth of that class must be limited commensurate with the date the class is certified, not when Plaintiffs' first filed suit on their own behalf. For this reason, Plaintiffs' definition, at the very least, must be narrowed in

---

[51] *Swales*, 985 F.3d at 435 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)); *see also McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010).
[52] *McKnight*, 756 F. Supp. 2d at 808.
[53] *Sandoz*, 553 F.3d at 916-17; *see also Hamm*, 2022 WL 2713532, at *4.
[54] *McKnight*, 756 F. Supp. 2d at 808.

scope to include only those potential members of the collective action whose claims are not time-barred under the FLSA, under either the two-year or three-year statute of limitations.

**F. Plaintiffs' Requested Means of Notice are Excessive and Should be Curtailed**

Plaintiffs' request that they be permitted to issue a "reminder" notice in addition to the original notice is unwarranted. "Courts have a responsibility to avoid 'stirring up' litigation through unwarranted solicitation, and "must ensure that an 'employer is not unduly burdened by a frivolous fishing expedition.'"[55] Issuing notice through regular mail, email, text message, and WhatsApp messaging is sufficient to ensure those who fall within the appropriate class definition receive notice of the claims in this case directly, without the need for an additional reminder notice. Thus, the use of a "reminder" notice is not warranted in this case, particularly given the multiple means by which putative plaintiffs will receive notice of Plaintiffs' claims directly to their homes, computers, and cell phones.[56] Accordingly, this Court should limit notice to regular mail, email, text message, and WhatsApp messaging and deny Plaintiffs' request to issue "reminder" notices.

---

[55] *Behnken*, 997 F. Supp. 2d at 516 (citations omitted).

[56] *See, e.g., Santinac v. Worldwide Labor Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 618-19 (S.D. Miss. June 2, 2015) ("[P]laintiff has 'not identified any particular reason why a reminder notice is necessary to ensure sufficient notice under the circumstances of this case.' The Court therefore denies [Plaintiff's] request without prejudice to Santinac to later file a motion requesting that the reminder noticed be sent if there is a compelling reason to do so."); *In re Wells Fargo*, 2013 WL 2180014, at *3 (denying plaintiff's request for a reminder notice as unnecessary and inappropriate); *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 357-58 (E.D.N.Y. 2012) (denying request for reminder notice because plaintiff failed to identify any reasons why such notice was necessary under the particular circumstances of the case); *Witteman v. Wisconsin Bell, Inc.*, No. 09-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010); *Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) ("There shall not be any 'reminder notice' provided. Plaintiffs have requested such reminder notices in other cases in this district and those requests have been denied because they are unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit."); *Robinson v. Ryla Teleservices, Inc.*, No. 11-131, 2011 WL 6667338, at *4 n.7 S.D. Ala. Dec. 21, 2011) (adopting the reasoning in Witteman and denying the plaintiffs' request to send a reminder notice to the putative class); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010); *Hines v. Ironclad Energy, LLC*, No. 19-155, 2019 WL 5027021, at *3 (W.D. Tex. Aug. 23, 2019) ("The Court finds that Plaintiffs have not demonstrated that a reminder notice is necessary to ensure sufficient notice to potential class members of their right to opt-in, particularly in light of Plaintiffs' planned notice via U.S. mail, email, and text message.").

## III. CONCLUSION

For the reasons set forth above, Defendants pray that this court deny Plaintiffs' request for collective treatment as to Plaintiffs' FLSA reimbursement claim and limit the class and notice, as set forth herein.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Brandon Davis*

Brandon Davis (La Bar #29823)
Molly C, McDiarmid (La. Bar # 36426)
Jennifer Clewis Thomas (Admitted Pro Hac Vice)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Brandon E. Davis*
BRANDON E. DAVIS