UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ERNESTO JIMENEZ-GONZALEZ and JOSE ALBERTO TORRES-MARTINEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | CIVIL ACTION NO.  3:24-CV-00820 |
| | JUDGE BRIAN A. JACKSON |
| VERSUS | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| CORA TEXAS GROWERS AND HARVESTERS AGRICULTURAL ASSOCIATION, INC. and CORA TEXAS MANUFACTURING COMPANY, LLC | |

DEFENDANTS' POST-HEARING MEMORANDUM[1]

NOW INTO COURT, through undersigned counsel, comes defendants, Cora Texas Growers and Harvesters Agricultural Association, Inc. ("Cora Association") and Cora Texas Manufacturing Company, LLC ("Cora Manufacturing") (collectively "Defendants"),[2] who respectfully submit this Post-Hearing Memorandum pursuant to this Court's Minute Entry.[3]

I.    Plaintiffs proposed FLSA collective action definition is overbroad.

Plaintiffs' proposed notice is impermissibly overbroad because it is not tailored to ensure that only individuals who are actually similarly situated receive notice. While Defendants deny the need for notice for the reasons discussed below, Plaintiffs resist including job order numbers on the grounds that they may be confusing. Defendants disagree and believe job order numbers remain a precise and determinable way to define the proper collective action class. Yet an objective,

---

[1] Defendants incorporate all arguments raised in their Opposition to Plaintiffs' Motion for 29 U.S.C. § 216(b) Notice of Similarly Situated Workers and for Disclosure of Contact Information (R. Doc. 35) and their Opposition to Plaintiffs' Motion for Rule 23 Class Certification (R. Doc. 40) as if asserted herein.

[2] Cora Texas Manufacturing Company, LLC was not Plaintiffs' employer, notwithstanding reference to "Defendants" throughout.

[3] R. Doc. 52.

readily accessible alternative exists: EAC numbers, which all Plaintiffs and putative class members have access to through their passports and visa application receipts.[4] Including EAC numbers provides a precise mechanism to ensure that opt-ins are, in fact, subject to the same employment agreements and circumstances at issue, particularly where the question of joint-employment remains undecided.[5] Absent such limiting criteria, Plaintiffs' proposal to list both Defendants in the notice should this Court grant certification risks sweeping in individuals who were not employed by one or the other, and were not subject to the relevant agreements. Plaintiffs' concern that identifying only Cora Association in the notice would suggest an impermissible view of the merits is unavailing. Limiting the notice to Cora Association no more signals a merits conclusion than Plaintiffs' proposed reference to "Defendants." Indeed, Plaintiffs' statement to this Court that Cora Manufacturing was included primarily out of solvency concerns, an issue distinct from joint employment, underscores why narrowing the notice is appropriate.[6] To prevent over-inclusion, should collective action certification be granted, the notice must be limited to workers associated with Cora Association and further cabined through objective identifiers such as EAC numbers to ensure notice will be sent to only those workers plausibly similarly situated.

II.    **Plaintiffs' reimbursement claims are not suitable for collective resolution.**

Plaintiffs cannot meet their burden post-*Swales* to show that they are "similarly situated" to all other members of the putative collective action class with respect to their reimbursement claim. Plaintiffs erroneously frame the issue on the merits as simply whether Plaintiffs were reimbursed for employment expenses.[7] However, this framing completely ignores the basis on

---

[4] *See* R. Doc. 40-1, p. 11-12.

[5] While Defendant acknowledges the concerns raised by Plaintiffs about the confusion of including such numbers, should this Court elect to certify a collective action and send notice, Plaintiffs concerns can be addressed by including specific instructions in the notice directing Plaintiffs to this information to determine eligibility.

[6] R. Doc. 55, p. 44.

[7] R. Doc. 46.

which Defendants contend that they did not violate the FLSA's minimum wage payment provisions.[8] The real merits issue in this case, as acknowledged in Plaintiffs' Complaint, is (1) whether Plaintiffs can show expenses were unpaid; (2) whether those expenses were required to be reimbursed; and (3) whether any alleged failure to reimburse those expenses effectively reduced Plaintiffs' pay below minimum wage, in violation of the FLSA.[9] Significantly, the analysis of whether any expenses are owed  and whether Defendants satisfied their minimum wage obligations to Plaintiffs or any other employee is highly individualized and cannot be resolved collectively.

Since the similarly situated determination turns on whether the merits question can be resolved collectively, the elements of Plaintiffs' FLSA claim are relevant. To prevail on their FLSA claim, Plaintiffs must prove the following essential elements: (1) the existence of an employer/employee relationship; (2) the employee engaged in activities covered by the FLSA; (3) the employer violated wage requirements covered by the FLSA; and (4) that actual compensation damages are due to the employee.[10] In the present case, Plaintiffs fail to present evidence that the first, third, or fourth element of this analysis can be answered on a collective basis, precluding them from proving that others are "similarly situated."

### A. *The joint employment inquiry is not susceptible to collective resolution.*

Plaintiffs have not met their burden under *Swales* to show that the joint employer inquiry can be resolved on a collective basis. Joint employment under the FLSA is governing by the "economic realities test," which is a multi-factor, fact-intensive balancing inquiry that turns on the particulars of each worker's relationship with the alleged employer and therefore does not lend

---

[8] *See Swales* at 442 (explaining that the similarly situated analysis requires district courts to "consider evidence relating to this threshold question" to determine whether the question can be answered on a collective basis).

[9] R. Doc. 1, ¶ 66.

[10] *St. Hubert v. OPS Fam. Care, LLC*, No. CV 25-1277, 2026 WL 81707, at *2 (E.D. La. Jan. 12, 2026).

itself to collective resolution.[11] Here, Plaintiffs have offered no common evidence demonstrating that joint employment status with Cora Manufacturing can be resolved collectively, or even that such a relationship existed for the named Plaintiffs themselves. Indeed, their job orders do not identify Cora Manufacturing as an employer,[12] and their own sworn testimony contradicts any claim of joint employment.[13]

### B. *Liability cannot be determined on a collective basis.*

Plaintiffs also fail to provide sufficient evidence to show that the merits questions—whether any expenses are due and unpaid and whether Defendants failed to pay minimum wage wage in violation of the FLSA—can be answered collectively. Plaintiffs argue that whether reimbursements were paid can be determined collectively, but answering this question in the affirmative alone will not determine whether Defendants violated the FLSA's minimum wage requirements. First, whether reimbursements are owed at all requires a fact-intensive, individualized inquiry into each Plaintiffs' travel, lodging, expenditures, and other specifics. Then, this Court will need to determine if the wages of Plaintiffs and other members of the putative collective action fell below minimum wage.[14] Issues remain about how the policy affected each employee and whether the policy resulted in a violation of the FLSA. Thus, Plaintiffs have not met their burden of showing a single policy applicable to their reimbursement claim.

Preliminary discovery revealed reimbursement variances that necessarily impact whether an FLSA minimum wage violation occurred as to each individual Plaintiff or putative class

---

[11] *White v. Wood Group Mustang, Inc.*, No. 4:21-CV-3985, 2024 WL 4266761, at *5 (S.D. Tex. Sept. 23, 2024).

[12] R. Docs. 33-4, 33-5, 33-6, 33-7.

[13] See R. Doc. 40-2, pp. 8-10;

[14] *See Swales*, 985 F.3d at 442 (explaining that notice is justified "when the pleadings and only preliminary discovery shows sufficient similarity between the plaintiffs' employment situations"); *see also*, *Eshelman v. MPFP, LLC*, No. 4:20-CV-3119, 2022 WL 2655821, at *3 (S.D. Tex. June 22, 2022), *report and recommendation adopted*, No. 4:20-CV-03119, 2022 WL 2652021 (S.D. Tex. July 8, 2022) ("Plaintiffs also argue all drivers were subject to the same pay practice and therefore differences do not preclude collective action. Plaintiffs' arguments may have carried weight using the *Lusardi* analysis, but they are unpersuasive post-*Swales*").

member. For example, the testimony of Cora Association's president, Katie Nunez, underscores that the calculation of reimbursement estimates for H-2A workers depends on numerous individualized factors, such as the worker's hometown, specific travel routes, the consulate visited, lodging arrangements, and whether the employee traveled alone or with others.[15] While the reimbursements received by H-2A workers upon arrival may have been estimates, the estimates varied depending on the unique factual circumstances of each individual worker. In other words, while the formula for preparing the estimates may be the same, the unique input variables necessarily produce unique outputs.[16] These unique outputs are not simply evidentiary considerations or variations in damages calculations,[17] especially for those workers who submitted receipts to be paid the difference between the reimbursement based on estimates received and the actual costs incurred.[18] Instead, the question Plaintiffs and this Court will have to reckon with on an individual basis is whether expenses were owed **at all** based on these unique factors. Additionally, even if expenses are due, these factual differences may mean some workers received minimum wage under the FLSA.[19] In short, determining whether Defendants violated the FLSA's minimum wage requirement requires individualized reimbursement calculations.

---

[15] R. Doc. 40-3, pp. 3-6.

[16] *Eshelman*, 2022 WL 2655821 at *3 (denying certification where "there is a wide variation among the drivers with respect to virtually all key inputs into the liability formula").

[17] Plaintiffs rely on several pre-*Swales* district court decisions outside the Fifth Circuit to argue that varying reimbursements do not preclude collective treatment. These cases are neither binding nor persuasive. Except for one, each was analyzed under the two-step conditional certification framework that *Swales* expressly rejected and that required only a "modest showing" or "minimal burden" at the conditional certification stage, a significantly less onerous standard than Plaintiffs must satisfy here. *See Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257 (E.D. Pa. 2014); *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012 (S.D. Iowa 2016). Moreover, the cited cases involved uniform, formulaic reimbursement schemes that applied identically to all employees and did not permit individualized adjustment based on actual expenses. *See Barker v. ITL Foods, LP,* No. CIVILACTIONH22342, 2023 WL 5613409 (S.D. Tex. July 24, 2023), *report and recommendation adopted*, No. 4:22-CV-00342, 2023 WL 5615783 (S.D. Tex. Aug. 29, 2023) (all pizza delivery drivers were reimbursed .30 cents per mile regardless of actual vehicle expenses incurred). Here, by contrast, reimbursements were based on individualized, employee-specific estimates, and the policy expressly permitted workers to submit receipts to receive all reimbursements owed.

[18] R. Doc. 40-3, p. 6.

[19] *Eshelman*, 2022 WL 2655821 at *3 ("[T]he potential variations among drivers impact not only the amount of an individual driver's unpaid wages, **but also whether the scheme resulted in compensation below minimum wage and therefore violated the FLSA.** Absent from the record is any information from which Defendants' liability and

Were this Court to certify this claim to proceed collectively, the parties would have to consider the individual travel plans of hundreds of employees and possible expenses incurred, whether those expenses were shared with another employee, whether the employee provided documentation to Defendants of the expenses, whether the expense incurred is one that must be reimbursed, whether the expenses were reimbursed or remain unreimbursed, what pay was received by each employee, and whether minimum wage was satisfied. Consequently, this inordinate burden would implicate one of the very concerns articulated by the Fifth Circuit in *Swales*: settlement pressure driven by a need to avoid the extreme costs of properly defending themselves.[20]

### III. Plaintiffs remaining claims are not suitable for class-wide adjudication pursuant to Rule 23.[21]

For a Rule 23 class to be certified, "the question of law or fact common to class members [must] predominate over any questions affecting only individual members."[22] Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication be representation."[23] Like the "similarly situated" analysis under *Swales*, the Rule 23(b)(3) predominance inquiry "requires the Court to identify the substantive issues that will control the outcome of the litigation, assess which issues predominate, and then determine whether the issues are common to the class."[24] "[A]n individual question is one where members of a proposed class will need to present

---

the delivery drivers' damages can be determined on a collective basis") (emphasis added); *Eltayeb v. Deli Mgt., Inc.*, No. 4:20-CV-00385, 2021 WL 5907781, at *4 (E.D. Tex. Dec. 14, 2021) ("While Eltayeb has demonstrated that delivery drivers performed the same basic tasks and were subject to the same pay practices, *Swales* demands more").

[20] *See Swales*, 985 F.3d at 436 (rejecting the lenient two-step conditional certification approach, in part, because it "exerts formidable settlement pressure").

[21] For the reasons set forth in Defendants' Opposition to Plaintiffs' Motion for Rule 23 Class Certification, Plaintiffs' motion to certify a class for breach of contract claims, to the extent they are subsumed by the FLSA must be denied. Additionally, this Court should decline the exercise of supplemental jurisdiction for the reasons described therein. (R. Doc. 40)

[22] Fed. R. Civ. P. 23(b)(3).

[23] *Crutchfield v. Sewerage and Water Bd. Of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016).

[24] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003).

PD.61541246.1

evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class proof."[25]

Plaintiffs seek class-wide adjudicated of their breach of contract and Louisiana Wage Payment Act (LWPA) claims which require the Court to consider the following issues, among others: (1) whether Plaintiffs were jointly employed by both Defendants, despite the employment agreement listing only one Defendant; (2) whether Defendants failed to pay Plaintiffs the required wages under the FLSA and their employment agreements; and (3) whether Defendants failed to pay Plaintiffs the required overtime under the FLSA and their employment agreements. Because many of these issues are individual and dependent on resolution of the other issues, individual questions predominate over the common questions in this case, precluding class certification under Rule 23(b).

### A. *Whether any given contract was breached requires individualized evidence.*

Resolving whether Defendants failed to pay proper wages and to what degree requires a granular, plaintiff-by-plaintiff analysis. The Court must review, for each Plaintiff or class member, at a minimum, evidence showing (1) what expenses were incurred; (2) what reimbursement payments were made; (3) what particular circumstances may have warranted a greater reimbursement, such as whether an employee incurred extra costs traveling from their home to the nearest consulate; (4) what proof each Plaintiff can offer to substantiate their expenses; and (5) whether such expenses are due under the employment agreement or applicable regulation. Katie Nunez, President of Cora Association, provided testimony demonstrating that answers to these questions vary not only among putative class members but also between named Plaintiffs, since

---

[25] *Crutchfield*, 829 F.3d at 376 (5th Cir. 2016).

PD.61541246.1

reimbursements depend on several individualized factors.[26] Plaintiffs have made numerous allegations regarding expenses that may allegedly be owed to them, including but not limited to, commercial drivers' license fees, cell phone fees, and meal expenses. The Court will have to consider individual evidence for these claimed expenses, which Defendants dispute, including evidence relating to when and for how long a putative class member has possessed a commercial drivers' license and whether it was used for work in Mexico. For alleged cell phone expenses, the Court must determine if each Plaintiff obtained a U.S. cell phone, whether it was shared, whether it was used for personal use in the U.S. and/or abroad, and the specifics of their phone plans. Then, the Court will have to determine if these expenses, which vary, are due under the employment agreement. This approach underscores the necessity of individualized proof to decide breach claims for each worker. Only through individual assessment can the Court determine how Defendants' alleged reimbursement policies and practices affected each worker's wage payments and whether a breach occurred in any particular instance.

For all these reasons, individualized questions outweigh any common issues. The payment of expenses and any impact on wages is inherently fact-driven and worker-specific, making class certification unsuitable in this case. Even if Plaintiffs could satisfy the requirements of Rule 23(a), including numerosity, commonality, typicality, and adequacy, which Defendants dispute, their inability to meet the predominance standard alone prevents certification under Rule 23.[27]

---

[26] R. Doc. 40-3, pp. 3-6.

[27] *See Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011) ("[A] party seeking class certification under Rule 23(b)(3) must also demonstrate… that questions common to the class members predominate over questions affecting only individual members"); *see also*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (explaining that predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement).

PD.61541246.1

### B. *Individualized concerns dominate the joint employment analysis.*

Joint employer status is not a "common question" capable of class wide resolution in this case. As discussed above, whether an entity qualifies as a joint employer requires a fact-intensive inquiry into the economic realities of each individual employment relationship, including the nature and degree of control exercised, and the circumstances under which the individual performed work.[28]

Plaintiffs have the burden of showing that their claims are suitable for class-wide adjudication, yet they have not presented evidence showing that joint employment with Cora Manufacturing can be resolved based on common proof.[29] Plaintiffs do not dispute that the relevant job orders do not list Cora Manufacturing as an employer, and Plaintiffs' own deposition testimony affirmatively undermines the claim that they were jointly employed by Cora Manufacturing.[30] Plaintiffs explained during oral argument that they "think it's going to be readily apparent" that the joint employment inquiry will be "subject to common proof."[31] However, speculation cannot substitute for proof.

Further, Plaintiffs propose an unwieldy class that risks enveloping workers who were never subject to the employment agreements at issue in Plaintiffs' Complaint. The Court would be forced to examine, for each class member, which entity contracted with them, whether they were bound by the relevant agreements, and what role, if any, each Defendant played in their employment. This individualized analysis cannot be circumvented. To do so would adjudicate the rights of workers who may have no connection to the agreements, unless they chose to opt out. The joint

---

[28] *White*, 2024 WL 4266761, at *5.
[29] *Luviano v. Multi Cable, Inc.*, No. CV1505592BROFFM, 2017 WL 3017195 (C.D. Cal. Jan. 3, 2017).
[30] *See* R. Doc. 40-2, pp. 5-8; *see also*, R. Doc. 40-1, pp. 7-10.
[31] R. Doc. 55, pp. 43-44.

PD.61541246.1

employment question is not just individual, but it shapes liability for all other claims, including those that might otherwise be common amongst all members.

### C. The Named Plaintiffs are not suitable class representatives.

Rule 23 requires that representatives of a class fairly and adequately protect the interests of the class.[32] Plaintiffs do not meet this burden. Plaintiffs' circumstances foreclose their ability to adequately represent a class. For example, neither named Plaintiff was employed in 2024, so they could not represent employees who worked for Cora Association in 2024.[33] Plaintiffs suggested they may amend their Complaint to include a suitable representative, but they have not done so. Therefore, this argument should not be afforded weight.

Additionally, Plaintiffs' deposition testimony reveals a concerning lack of knowledge about the fundamental aspects of the claims asserted in this case. For example, Plaintiff Torres-Martinez admitted to being unaware of whether he received reimbursement for travel expenses, so there is no way he can purport to represent Plaintiffs with varying expense issues.[34] Further, he demonstrated a lack of understanding regarding the relevance of documents produced by his counsel.[35] Similarly, Plaintiff Jimenez-Gonzales testified in his deposition that he did not read or review the 2021, 2022, or 2023 contracts which he represents were breached by Defendants in this lawsuit.[36] Moreover, he testified that he was unaware whether he even had a contract with Cora Association, and that he was further "unaware of everyone's situation" when asked if that statement was true for all other class members he purports to represent.[37]

---

[32] Fed. R. Civ. Proc. 23(a)(4).
[33] *See* R. Doc. 1, ¶¶ 12-13.
[34] R. Doc. 40-2, pp. 5-6.
[35] R. Doc. 40-2, pp. 7-8.
[36] R. Doc. 40-1, pp. 7-8.
[37] R. Doc. 40-1, pp. 9-10.

PD.61541246.1

Overall, Plaintiffs' deposition testimony reflects lack of understanding regarding the claims in this case. Plaintiffs' arguments related to the language barriers are unpersuasive, particularly when Spanish translations of their employment agreements and the Complaint exist, and Plaintiffs testified that they received Spanish translations of their employment agreements.[38] Plaintiffs demonstrated lack of insight into the claims in this case risks undermining the due process rights and claims of absent members of the class.  Because "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times."[39]  "Class action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, **not** for capable, committed counsel to pursue their own goals through those class members."[40]  While Defendants do not dispute that Plaintiffs' counsel is capable and committed, they are not permitted to pursue class action litigation where the named Plaintiffs are unfit to represent the interests of all class members.

## IV.    Conclusion.

For each of the foregoing reasons, Plaintiffs' FLSA claims and remaining breach of contract allegations are not suitable for collective or class-wide resolution. The arguments advanced demonstrate that both the determination of joint employment status and any possible assessment of alleged minimum wage violations under the FLSA require individualized, worker-specific analysis that cannot be resolved on a collective basis. Plaintiffs have failed to present common evidence sufficient to prove that all members of the putative class are similarly situated,

---

[38] R. Doc. 40-1, p. 8.
[39] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).
[40] *Id*. at 484 (emphasis added).

- 11 -

and the individualized circumstances surrounding reimbursements, employment relationships, and wage payments preclude collective adjudication. Furthermore, Plaintiffs' proposed notice is impermissibly broad, risking inclusion of individuals who are not properly part of the class, and lacks objective criteria to ensure only truly similarly situated workers are notified. Additionally, predominance of individual issues over common questions under Rule 23, combined with the inadequacy of the named Plaintiffs as representatives, further prevents class certification pursuant to Rule 23. Collectively, these arguments support the conclusion that Plaintiffs have not met their burden under the applicable legal standards, and their claims should not proceed as a collective action or class action.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Molly C. McDiarmid*
Brandon Davis (La Bar #29823)
Molly C, McDiarmid (La. Bar # 36426)
Jennifer Clewis Thomas (Admitted Pro Hac Vice)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
brandon.davis@phelps.com
molly.mcdiarmid@phelps.com
jennifer.clewis@phelps.com

**ATTORNEYS FOR DEFENDANTS**

- 12 -

PD.61541246.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Molly C. McDiarmid*

- 13 -